UNITED STATES of America,
Plaintiff–Appellee,

v.

Louis Juan DIAZ, Defendant–Appellant.

No. 91–30165.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 2, 1992.

Decided April 15, 1992.

Mildred J. Carmack and John R. Faust, Jr., Schwabe, Williamson & Wyatt, Portland, Or., for defendant-appellant.

Jennifer J. Martin, Sp. Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before: HALL, O'SCANNLAIN, and LEAVY, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellant Louis Diaz appeals his jury conviction for possession with intent to distribute more than 500 grams of cocaine pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II). We affirm.

I

On April 5, 1990, Diaz and undercover officer Kim Lowe discussed the purchase of one kilogram of cocaine. Diaz and Lowe agreed to meet on June 15, 1990, to complete the transaction. At 5:15 p.m. on June 15, 1990, Lowe met Diaz in the parking lot of a Chinese restaurant across the street from a storage facility. Diaz told Lowe

that "his people" were late. He left and returned half an hour later. Diaz gave Lowe $2,000 in cash and told her that he would procure the remaining $8,000 from his associates. He left once more and returned to the parking lot at 6:15 p.m. The two then drove across the street in Diaz's van to the storage facility. Diaz's eight year old son was also in the van with him.

Diaz told his son to get out of the van while he talked to Lowe. According to Lowe, Diaz then counted out several thousand dollars and gave the money to Lowe. Lowe put the cash away and handed a kilogram of cocaine to Diaz. Diaz cut the wrapper to look at the cocaine, placed it in a bag, and put it under the driver's seat of his van. Lowe then signalled a waiting team of agents. Diaz was subsequently arrested by members of the Clackamas County Sheriff's Office and the Regional Organized Crime and Narcotics Task Force ("ROCN").

After the arrest, Diaz was interrogated by Detective Roberts of the Clackamas County Sheriff's office and Deputy Spang of the Washington County Sheriff's office. According to Detective Roberts and Deputy Spang, Diaz admitted that he was in the process of buying a kilogram of cocaine from Lowe. He also admitted giving Lowe his Corvette, stereo, and television as collateral for the unpaid balance of the cocaine.

During trial, however, Diaz testified that he told Deputy Lowe that he would not complete the transaction, and that the transaction was, in fact, not completed. Diaz was found guilty of possessing more than 500 grams of cocaine with intent to distribute in violation 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II).

## II

■ Diaz first argues that the government improperly commented, during closing argument, on Diaz's post-arrest silence. We review for an abuse of discretion the district court's decision to permit comments made in closing argument after objection. *United States v. Makhlouta*, 790 F.2d 1400, 1403 (9th Cir.1986) (citing *United*

*States v. Patel*, 762 F.2d 784, 794 (9th Cir.1985)). Diaz objects to the following comments:

> [A]ssuming in the middle of this Mr. Diaz in fact told Deputy Lowe, "No, no, I can't go through with this. No, No I've had a change of heart, I can't go through with this. Take your cocaine and go away. I'm not going to give you any money," why did he tell the police—that's not what he told the police when he was arrested. That's not the statement he gave when he was arrested. If ... that's what happened, why didn't he say that to the police?

Diaz argues that these comments were designed to have the jury draw impermissible inferences from his silence.

The Supreme Court in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), held that the use for impeachment purposes of a defendant's silence at the time of arrest and after *Miranda* warnings violates the Due Process Clause. *Id.* at 619, 96 S.Ct. at 2245; *see also United States v. Lopez*, 575 F.2d 681, 685 (9th Cir.1978) (prosecutor's statement in closing argument referring to a defendant's silence at the time of arrest and after receiving *Miranda* warnings constituted plain error).

■ The Court, however, has distinguished *Doyle* in cases where the prosecution's use of post-arrest silence "merely inquires into prior inconsistent statements." *Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980). Thus, we held in *United States v. Ochoa–Sanchez*, 676 F.2d 1283 (9th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982):

> When the defendant offers testimony at trial that differs from his post-arrest statement, he raises a question of credibility. The jury must determine whether to believe the version of events to which the defendant testifies at trial or the version he revealed to the police when arrested. In such a situation, the jury is entitled to all the relevant evidence bearing on credibility. The prosecutor, to provide this evidence, may probe all post-

arrest statements and the surrounding circumstances under which they were made, including defendant's failure to provide critical details. *Id.* at 1286. A defendant's post-arrest statements need only be arguably inconsistent with the defendant's trial testimony in order to justify comment by the prosecution upon the discrepancy. *Makhlouta,* 790 F.2d at 1404. Because Diaz's post-arrest statement that he was buying a kilogram of cocaine is arguably inconsistent with his trial testimony that he did not complete the transaction, the closing argument comment was proper.

## III

■ Diaz next argues that the district court improperly excluded testimony from two character witnesses. We subject the district court's construction of the Federal Rules of Evidence to de novo review. *United States v. Sanchez–Robles,* 927 F.2d 1070, 1077 (9th Cir.1991).

During direct examination of Gary Lawson, Diaz's pastor, the district court sustained the government's objection to a question inquiring into Diaz's "character traits for being prone to criminal activity or conduct." The district court also sustained the government's objection to a question posed to Diaz's mother, Manuela Paganelli. Diaz's mother was asked about Diaz's "character trait for being prone to large-scale drug dealing." Diaz argues that the district court erred in sustaining these objections because character evidence offered by the defendant as to whether he is prone to criminal activity was admissible pursuant to Federal Rule of Evidence 404(a)(1).[1] In order to determine the admissibility of the excluded character evidence under Rule 404(a)(1), we must decide if the propensity to engage in criminal conduct and the propensity to engage in large scale drug dealing are pertinent character traits. We deal with each asserted character trait in turn.

■ The government errs in asserting that "being prone to criminal conduct" is not an "actual" character trait but is, instead, a conclusion drawn from other specific character traits such as honesty, gullibility, and reliability. The Supreme Court in *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), held that a defendant may introduce favorable testimony concerning "the general estimate of his character." *Id.* at 476, 69 S.Ct. at 218. The First and Fifth Circuits have held further that character traits admissible under Rule 404(a)(1) need not constitute specific traits of character but may include general traits such as "lawfulness" and "law-abidingness." *United States v. Angelini,* 678 F.2d 380, 382 (1st Cir.1982); *United States v. Hewitt,* 634 F.2d 277, 279 (5th Cir.1981).

We find that Diaz's proneness to criminal activity is an admissible character trait encompassed under *Angelini*'s general definition of "law-abidingness." Though the word "law-abiding" was not used, Diaz's question concerning proneness to criminal activity was intended to elicit information concerning Diaz's "law-abidingness." The inquiry as to whether Diaz is prone to commit criminal activity is simply the converse of an inquiry into whether Diaz is a law-abiding individual. The two inquiries elicit the same information. A defendant's propensity to commit crimes is an admissible character trait.

■ A defendant's propensity to engage in large scale drug dealing, however, is not an admissible character trait. Proneness to large scale drug dealing cannot be viewed simply as the converse of the character trait of "law-abidingness." Such an inquiry would be misleading if addressed to a defendant with a record of criminal offenses other than drug dealing: If answered in the negative, the impression may be given that the defendant is a law-abiding person although he has a record of other crimes. We hold, therefore, that the question concerning Diaz's proneness to criminal activity addressed to the pastor was a proper inquiry into a general character

---

1. Rule 404(a)(1) states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same."

trait. The question addressed to Diaz's mother concerning Diaz's proneness to large scale drug dealing was not.

Because the district court erred by sustaining one of the government's objections, we next consider whether the district court's exclusion of the proffered evidence was prejudicial. *See Arizona v. Fulminante,* — U.S. —, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). The government introduced direct evidence of the transaction, including recorded telephone and personal conversations in which Diaz arranged the drug transaction. The government also introduced eyewitness testimony from the arresting officers that Diaz completed the transaction. Moreover, an officer who was monitoring the conversation between Diaz and Lowe during the transaction testified that he overheard Diaz counting the money. The government's evidence was undermined, however, by the undercover officer's failure to tape record the actual transaction even though she had recorded each conversation leading up to the drug deal.

Diaz called eleven character witnesses in addition to the pastor. They were allowed to testify concerning Diaz's honesty and gullibility as well as his general character. The witnesses did not testify concerning the general trait of law-abidingness or Diaz's propensity to engage in criminal activity. Though the information elicited helped to paint a positive picture of Diaz's character, none of the witnesses were allowed to testify as to whether Diaz was prone to criminal conduct.

■ We think it highly unlikely that the pastor's answer to the inquiry into Diaz's proneness to criminal activity would have raised any substantial doubt concerning Diaz's guilt beyond that created by the testimony of the eleven other character witnesses. In light of the strength of the government's case, we hold, therefore, that the exclusion of the character evidence was harmless error.

## IV

Before sentencing, Diaz filed a motion to strike application of the United States Sentencing Guidelines to his case. The federal guidelines mandated a sentencing range from 97 to 121 months. Diaz argued that the court should have applied, instead, the Oregon state sentencing guidelines, which listed a maximum sentence for his offense as 18 months, because the ROCN did not follow articulated principles when it referred his case to federal prosecutors. This motion was denied and the district court sentenced Diaz to a term of 109 months of imprisonment.

We review the district court's denial of Diaz's motion to apply Oregon state sentencing guidelines de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We have recently held that although a defendant has a due process right to be free of arbitrary or capricious charging decisions, there is no judicial remedy available to correct such violations. *United States v. Redondo–Lemos,* 955 F.2d 1296, 1300–01 (9th Cir.1992). Our holding in *Redondo–Lemos* reflected our concern about the separation of powers problems necessarily implicated by such an inquiry. *Id.* at 1299–1300.

■ The courts, however, "do indeed have the authority to inquire into charging ... decisions to determine whether the prosecutor is abusing her awesome power to favor or disfavor groups defined by their gender, race, religion or similar characteristics." *Redondo–Lemos,* 955 F.2d at 1301; *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). Diaz has not argued that the decision to refer his case to federal prosecutors was motivated by animus toward him based upon a suspect classification. Since the only judicially cognizable claim for unconstitutional exercises of prosecutorial discretion requires a showing "that the prosecutor was motivated by a discriminatory purpose in the very case before" the court, *Redondo–Lemos,* 955 F.2d at 1301, the district court correctly denied Diaz's motion.

AFFIRMED.