976 F.2d 738
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Douglas GREEN, Defendant-Appellant.
 No. 91-50542.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 18, 1992.
Decided Sept. 16, 1992.
 
 1
 Before TANG and CYNTHIA HOLCOMB HALL, Circuit Judges, and WALKER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Steven Douglas Green was convicted on one count of conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 846. He was sentenced to a period of 364 months imprisonment, pursuant to the Federal Sentencing Guidelines. Green appeals both his conviction and the enhancement of his sentence for organizing the conspiracy. The district court had jurisdiction under 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291. We affirm Green's conviction but vacate his sentence and remand for new sentencing.
 
 
 4
 * Green first contends that the government failed to present sufficient evidence to support his conviction for conspiracy. Green does not contest the existence of a conspiracy, but instead argues that the government failed to prove that he had knowledge of Williams' and Robbins' intent to purchase and distribute methamphetamine.
 
 
 5
 Once evidence of a conspiracy is proven, "evidence establishing beyond a reasonable doubt a knowing connection of the defendant with the conspiracy, even though the connection is slight, is sufficient to convict him of knowing participation in the conspiracy." United States v. Meyers, 847 F.2d 1408, 1413 (9th Cir.1988).
 
 
 6
 Taken in the light most favorable to the government, the evidence at trial proved that Green knew Robbins and knew he had dealt methamphetamine in the past; that Green rented the room from which Robbins and Williams called Officer Davidson; that Green was an associate of Nadler, whose fingerprints were all over the $30,000 in cash in the Pop Tarts box, and had rented the room in which that cash was found; that Green met with Nadler and Robbins, along with Williams and Keith, at Denny's restaurant, and was the only apparent link between Nadler and the other men;[1] that Green had a concealed weapon;[2] and that Green told Davidson over the telephone that Robbins and Williams had the money for the deal, evidencing his knowledge of some kind of transaction.
 
 
 7
 Furthermore, the very implausibility of Green's explanations of his conduct--that he was in San Diego for business and entertainment purposes--strengthens the inference created by the objective evidence that he knew of the conspiracy. Although he claimed to be in search of a bail fugitive, Green never identified the individual nor provided any paperwork to substantiate his claim. Green also testified that he was in town to settle a $3,000 debt on a previous bail bond made out to Robbins. Again, Green offered no evidence other than his testimony to support this claim. Finally, Green claimed that he rented rooms at the La Quinta motel because he, along with Nadler and their companions, intended to go fishing in Mexico the next day. Yet no fishing equipment, change of clothes, or luggage of any kind were found in the rooms or the vehicles belonging to Green and Nadler. Where, as here, a defendant's testimony is implausible, the jury can rightfully use this information to conclude that the opposite is true. Thus, a jury's disbelief of a defendant's testimony, combined with other objective evidence, can support an inference that the defendant is guilty. See United States v. Stauffer, 922 F.2d 508, 515 (9th Cir.1990) (defendant's testimony that he was not involved in extortion-like activities was implausible and could be used to support jury's inference of guilt).
 
 
 8
 Taken in the light most favorable to the government, Green's presence at the La Quinta Inn on the night of January 22 went beyond mere association with or proximity to criminals. Green's attempts to analogize his participation as passive and consistent with that of an innocent bystander are vitiated by the circumstances surrounding his activity. In upholding similar convictions, we have noted that acts "which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity." United States v. Calabrese, 825 F.2d 1342, 1348 (9th Cir.1987). The evidence was sufficient for a rational trier of fact to find Green had a knowing connection to the conspiracy.
 
 II
 
 9
 Next Green argues that the federal government's assumption of jurisdiction over his case amounted to a violation of his right to due process. This court lacks authority to review this claim because Green makes no showing that the decision to charge him in federal court rested on some impermissible basis, such as gender or race. See United States v. Sitton, Nos. 91-50154, 91-50156, 91-50166, 91-50173, 50199, slip op. 7861, 7868, 1992 WL 150926 (9th Cir. July 2, 1992) (citing United States v. Redondo-Lemos, 955 F.2d 1296, 1300-01 (9th Cir.1992)).
 
 III
 
 10
 Green contends that in admitting evidence that he was in possession of a .357 revolver, the trial court abused its discretion by failing to conduct the balancing required under Fed.R.Evid. 403.
 
 
 11
 Although Green claims the trial judge never made a Rule 403 determination, a review of the record reveals this is not the case. At a pretrial conference, Green's counsel raised the issue of inadmissibility under Rule 403. He argued that evidence of Green's gun possession was irrelevant and highly prejudicial. The court, however, determined the evidence to be relevant to Green's participation in the conspiracy and ruled against Green. While the judge did not make specific references to the balancing required by Rule 403, a mechanical and formalistic recitation of the rule's requirements is not necessary so long as this Court can determine that the trial judge considered the matter. See United States v. Thomas, 893 F.2d 1066, 1071 (9th Cir.), cert. denied, 111 S.Ct. 80 (1990).
 
 
 12
 Green contends that evidence of his gun possession was highly prejudicial and of little probative value. As a bail bondsman, Green claims he had a legitimate reason to carry a concealed weapon. Yet at trial, Green failed to produce a permit for the gun; no statutory provision of the California Penal Code specifically allows a bounty hunter to carry a concealed firearm without a permit. Moreover, we have consistently held that in cases involving narcotics trafficking, evidence of gun possession is a relevant element of proof of criminal activity. See United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.) (holding that in a cocaine conspiracy, guns seized from defendant's residence were admissible at trial to prove intent to distribute), cert. denied, 488 U.S. 943 (1988); see also United States v. Butcher, 926 F.2d 811, 816 (9th Cir.) (guns and drugs are "inextricably intertwined"), cert. denied, 111 S.Ct. 2273 (1991).
 
 
 13
 We conclude that the trial court did not abuse its discretion in admitting this evidence.
 
 IV
 
 14
 Green argues that the trial court abused its discretion in excluding testimony regarding Green's work as a bail bondsman and his good character.
 
 
 15
 In colloguy, Green's counsel averred that the additional witness, an ex-sheriff acquainted with Green, would testify about Green's work as a bail bondsman, his need to carry a weapon, and his generally upstanding character. Prior to this testimony Green, and to a lesser degree Wesley, had already testified about the nature of a bail bondsman's work and the need to carry a weapon. The court ruled additional testimony on the subject of Green's work to be cumulative. A court is entitled to exclude cumulative evidence. Furthermore, given Green's extensive testimony on his work and its danger, we disagree with Green that the exclusion of additional testimony resulted in substantial prejudice.
 
 
 16
 Under Fed.R.Evid. 404(a)(1), an accused's truthfulness and honesty are character traits generally pertinent to the accused's guilt or innocence. See United States v. Diaz, 961 F.2d 1417, 1419-20 (9th Cir.1992) (holding quality of law-abidingness is pertinent character trait in drug prosecution and implicitly equating law-abidingness with truthfulness and honesty). Thus by not allowing Wesley to testify about Green's character, the district court improperly excluded relevant testimony. Nonetheless, we conclude this error was not prejudicial. As noted in Part I, the government offered substantial proof that Green was part of the conspiracy, and exclusion of Wesley's testimony could not have substantially affected the jury's deliberation.
 
 V
 
 17
 Green contends that the court's failure to provide a transcript of his testimony upon the request of the deliberating jury was prejudicial. At trial, however, Green failed to object to the judge's decision not to provide the transcript to the jury; we therefore review the court's action for plain error. See United States v. Marchini, 797 F.2d 759, 767 (9th Cir.1986), cert. denied, 479 U.S. 1085 (1987).
 
 
 18
 Green claims that by allowing the jury to hear the government's tapes of telephone conversations, but refusing to allow it to review his testimony, the district court prejudiced Green. It is unclear how Green could have been prejudiced by the delivery to the jury of tapes in which Green is neither speaking nor mentioned. Indeed, in his closing argument to the jury, Green's counsel emphasized that the absence of any mention of Green on the tapes was conspicuous and supported the conclusion that he was innocent. Green repeats this argument in his brief. To argue that the tapes are both a source of prejudice and a vindication of Green's innocence is wholly unpersuasive. We find no plain error.
 
 VI
 
 19
 In his final claim, Green argues that the district court erred in authorizing a three-level enhancement of his sentence from offense level 38 to 41. The court determined that Green was not a mere conspirator, but an organizer of the conspiracy, and therefore added three points pursuant to section 3B1.1(b) of the Sentencing Guidelines.
 
 
 20
 We review a district court's application of the Guidelines de novo, but we review findings of fact in the course of applying the Guidelines for clear error. United States v. Koenig, 952 F.2d 267, 271 (9th Cir.1991). The facts underlying the enhancement must be supported by a preponderance of the evidence. United States v. Restrepo, 946 F.2d 654 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 1564 (1992).
 
 
 21
 A defendant's financial backing of a drug scheme may support a finding that the defendant was a leader of the conspiracy. See United States v. Motz, 936 F.2d 1021, 1026 (9th Cir.1991). In Motz we held that evidence of financial backing for a marijuana growing operation, coupled with an agreement that the defendant would receive eighty to ninety percent of the crop harvested, supported the conclusion that the defendant was the engine of the drug conspiracy.
 
 
 22
 Here, Green's financial organizing shows no such backing. Williams set the wheels of the deal in motion, and there is no evidence showing when Green joined the conspiracy or what compensation he was to receive. Motz did not hold that evidence that a defendant participated in financing a deal is dispositive proof that he organized the conspiracy; rather, Motz relied on extensive financial participation as an important factor supporting that conclusion. A preponderance of the evidence shows that Green served as the nexus between Nadler and Robbins, but nothing more. We hold that the district court's finding that Green was an organizer of the conspiracy was clear error.
 
 
 23
 Green's conviction is AFFIRMED. His sentence is VACATED and the case is REMANDED for new sentencing consistent with Part VI of this disposition.
 
 
 
 *
 The Honorable Vaughn R. Walker, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 While there is no direct evidence linking Robbins and Williams to the cash found in Room 137, there is strong circumstantial evidence. First, when Williams and Robbins met with Davidson, they indicated that they had another $30,000 available for purchasing another five pounds of methamphetamine. Second, Green testified that the Pop Tarts box containing the cash belonged to Robbins
 
 
 [2]
 Green contends that the district court improperly allowed in evidence that he was in possession of a gun. This issue is addressed and resolved against Green in Section III