Keiko LAREZ, Plaintiff–Appellee and Cross–Appellant,

v.

William HOLCOMB, Defendant–Appellant and Cross–Appellee.

Nos. 91–55822, 91–56145, 91–56283 and 91–56284.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1993.

Decided Feb. 22, 1994.

Marion R. Yagman and Stephen Yagman, Yagman & Yagman, Venice, California, for the plaintiff-appellee-cross-appellant.

Richard M. Helgeson, Assistant City Attorney, Los Angeles, California, for the defendant-appellant-cross-appellee.

Before: PREGERSON, D.W. NELSON, and LEAVY, Circuit Judges.

D.W. NELSON, Circuit Judge:

Los Angeles Police Department Detective William Holcomb appeals the judgment on a jury verdict in favor of Keiko Larez in Larez's 42 U.S.C. § 1983 action. Larez's civil rights complaint alleged that Detective Holcomb stopped her, arrested her, and then detained her for several hours at a police station for questioning without probable cause, in violation of her Fourth Amendment rights. Holcomb asserts that the district court committed reversible error in its jury instructions. Larez cross-appeals the court's order that denied her motion to impose sanctions on Holcomb's counsel. Both Larez and Holcomb appeal the district court order awarding attorneys' fees. We have jurisdiction under 28 U.S.C. § 1291.[1] We affirm in part, reverse in part, and remand for a new trial on the issue of damages and for a recalculation of the attorneys' fee following the outcome of the trial on damages.

## I. BACKGROUND

On June 8, 1986, Detective William Holcomb began investigating a fatal, gang-related shooting that occurred in East Los Angeles. Officers at the Hollenbeck Station of the Los Angeles Police Department informed Holcomb that an eyewitness had provided information regarding the possible identity and location of the suspected gunman. The suspect was identified as Eddie Larez, who lived at 3514 Amethyst Street.

Holcomb dispatched undercover officers to observe the activities at and around Mr. Larez's home. Within an hour and a half, the officers observed a man, later identified as Richard Jimenez, who fit the description of the suspect. Jimenez was observed as he left the Larez residence with an unknown woman, later identified as Keiko Larez. Officer Martinez radioed this information to Holcomb at the Hollenbeck Station. Holcomb directed the officers to detain both individuals until he arrived at the location.

Following Holcomb's instructions, the officers stopped Keiko Larez (hereinafter "Larez") and Jimenez as the two walked away from the Larez residence. Larez and Holcomb gave very different accounts of the events that followed.

Larez testified that the officers, with guns drawn and pointed at her and Jimenez, instructed them to place their hands on their heads and turn around, and then handcuffed them. Larez said she did not resist, but asked the officers for an explanation. The officers conducted a pat-down search of both Larez and Jimenez, and informed the two that they were conducting a murder investigation in which Eddie Larez was a suspect. Larez claimed that she and Jimenez were put

---

1. Larez filed a motion to dismiss this appeal for lack of jurisdiction based on Larez's belief that the Notice of Appeal was filed late. On September 4, 1991, the motion to dismiss was considered and rejected by a motions panel of this court.

 Holcomb mailed a motion for a new trial on April 29, 1991, the last day allowed by Fed. R.Civ.P. 59(b) for serving such a motion. The motion was not postmarked, however, until the following day, April 30. The time limit for serving a motion for a new trial is determined by the date of mailing, not by the date of postmark. *See* Fed.R.Civ.P. 5(b). Thus, the motion for a new trial was timely served and Holcomb had thirty days from the date of entry of an order denying such motion to file a Notice of Appeal. *See* Fed.R.App.P. 4(a).

 The court denied Holcomb's motion for a new trial on June 14, 1991. Holcomb filed a Notice of Appeal on June 25, 1991. The motions panel therefore correctly ruled that the Notice of Appeal was filed in a timely manner and that jurisdiction was proper.

in the back of an unmarked police car and driven around the corner. Roughly ten minutes later, she says, a number of other officers arrived at the scene, including Holcomb, and one of the officers took Larez out of the unmarked car so that Holcomb could speak with her. Larez claimed that she remained handcuffed, did not respond to any of Holcomb's questions, and, after several minutes, was put back into the car, and taken to the Hollenbeck Station.

Larez testified that she was led, still handcuffed, through the back door of the Hollenbeck Station into a small holding cell, and that the cell door was closed and locked behind her. The handcuffs, she claimed, prevented her from finding a comfortable position in which to sit or lie down in the cell. Although a number of officers observed Larez through the window in the cell's door, Larez stated that no one responded to her requests that the handcuffs be removed. She testified that she remained in the cell alone for about two hours before Holcomb came in to speak with her.

After Holcomb questioned her for about twenty minutes regarding the murder, her knowledge of the existence of weapons in her family's house, and the whereabouts of her brother, Eddie, Holcomb drove Larez home at her request. Larez claimed that at no time was she told that she was under arrest or that she was a suspect in the investigation. She testified, however, that she believed she was under arrest.

Holcomb told the jury a very different story. Holcomb conceded that Larez was detained when she left her residence with Jimenez, but claims that there was reasonable suspicion upon which to base the detention. He argued that after the initial brief questioning, Larez was no longer being detained and was at all times free to leave. Holcomb further contended that Larez was cooperative and forthcoming from the start and agreed to being taken to the police station so that she could speak with Holcomb out of earshot of her family. Holcomb claimed that Larez never was handcuffed and that, although she was placed in the jail cell temporarily, the door was never locked. He said that she was given a seat in a cell rather than in the lobby because the murder was gang related and he wanted to protect her from being recognized. Holcomb did not argue that he had probable cause to arrest Larez; he argued that she was never under arrest.

Larez filed suit against Holcomb under 42 U.S.C. § 1983, alleging that she had been seized in violation of her Fourth Amendment rights. After trial, a jury returned a verdict in favor of Larez, awarding her $5,000 in compensatory and $50,000 in punitive damages.

Larez then moved for an award of attorneys' fees. The court granted the motion but awarded less than the requested amount. Larez also moved to impose Rule 11 sanctions on defense counsel because of assertions made in "Defendant's Opposition to Plaintiff's Motion for Attorney's Fees and a Multiplier." The court denied the motion.

Holcomb appeals the judgment on the jury verdict. He claims that the district court committed reversible error by instructing the jury that he had the burden of demonstrating that Larez voluntarily consented to the detention, and by instructing the jury that the City of Los Angeles would indemnify him for any compensatory damages assessed against him. Holcomb also contends that the district court judgment should be reversed because the court allowed Larez's counsel to inform the jury during closing argument that the City was authorized to indemnify Holcomb for punitive damages. Larez appeals the order denying her motion to impose Rule 11 sanctions on counsel for Holcomb, and claims that she is entitled to attorneys' fees for this appeal. Both Holcomb and Larez appeal the district court's attorneys' fee order.

## II. ANALYSIS

### A. *Voluntary Consent*

Holcomb contends that the district court committed reversible error in instructing the jury on the issue of voluntary consent. We review jury instructions for abuse of discretion and recognize that the district court has substantial latitude in tailoring them. *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir.1988). Moreover, "an error in in-

structing the jury in a civil case does not require reversal if it is more probably than not harmless." *Benigni v. Hemet,* 879 F.2d 473, 479 (9th Cir.1988). Even though the instruction challenged by Holcomb was technically incorrect, we conclude that, when the instructions are viewed as a whole, the error clearly was more probably than not harmless.

In one of its instructions to the jury, the district court stated that "[c]onsent must be voluntary and not the result of the arrest or coercion.... The Government has the burden of demonstrating that consent to an arrest was voluntary." This instruction, taken nearly verbatim from a criminal case,[2] was potentially misleading in two ways. First, the government was not a party to the suit. Given that Holcomb was a police officer who allegedly had used his position as a government official to deprive Larez of her rights, however, the reference to the government was not sufficiently misleading to warrant reversal. Second, the court failed to make clear in the instruction that, because Larez's action was a § 1983 civil action, Larez at all times had the ultimate burden of proving to the jury that she had been seized unreasonably in violation of the Fourth Amendment. *See Gilker v. Baker,* 576 F.2d 245, 246 (9th Cir.1978) (holding that, in a § 1983 action alleging illegal arrest, the ultimate burden of proof on the issue of illegal arrest remains with plaintiff); *cf. Ruggiero v. Krzeminski,* 928 F.2d 558, 563 (2d Cir.1991) (noting that, in a § 1983 action alleging illegal search and seizure, although burden of producing evidence of consent or other exceptions to warrant requirement may be placed on defendant, the risk of nonpersuasion remains with plaintiff). Holcomb contends that this failure warrants reversal because it had the effect of shifting the ultimate burden of proof on the

constitutionality of the detention from the plaintiff to the defendant. We do not agree.

Initially, we note that the meaning of the instruction was far from clear. It refers to "consent to an arrest," almost an oxymoron in this context, and states that "consent ... [must] not be the result of the arrest," a concept that, although it may apply in the warrantless search context, has no relevance in a dispute in which the only issue is whether or not the plaintiff was arrested. If read literally, the instruction is a non sequitur—it assumes the existence of an arrest, the very issue that was before the jury. At worst, the jury could have read the ambiguous instruction colloquially, equating "arrest" with the sequence of events that led to Larez being taken to the station and placed in the holding cell. Although, on this interpretation, the instruction erroneously would have shifted one element of Larez's burden of proof to the defense, even this potentially prejudicial reading of the instruction likely would have been harmless.

First, the voluntary consent instruction must be viewed in light of the jury charge as a whole. *See, e.g., Coursen v. A.H. Robins Co.,* 764 F.2d 1329, 1337 (9th Cir.1985). In all of its other instructions to the jury, the district court clearly indicated that the ultimate burden of proof rested with Larez. Thus, the court instructed the jury that "[i]n order to prove her claim, the burden is upon the plaintiff to establish by a preponderance of the evidence ... [t]hat the defendant performed or caused to be performed acts which operated to deprive the plaintiff of one or more of her constitutional rights," and explained that "[t]he plaintiff has to produce evidence which, considered in the light of all the facts, leads you to believe that what plaintiff claimed is more likely true than not." These instructions properly placed on Larez the ultimate burden of proving to the

---

2. *See United States v. Al–Azzawy,* 784 F.2d 890, 895 (9th Cir.1985). *Al–Azzawy* involved the propriety of a warrantless search rather than a dispute over an allegedly illegal detention. As phrased in *Al–Azzawy,* the instruction referred to "consent to a warrantless search" rather than "consent to arrest." *Id.* As originally phrased, the instruction makes sense. When a criminal defendant seeking to suppress evidence shows that the government has conducted a warrantless

search, the burden properly shifts to the government to show that one of the exceptions to the warrant requirement applies. In *Al–Azzawy,* for example, there was no question that a search had occurred; the only question was whether the officers had a legitimate reason for conducting the search without a warrant. *Id.* at 891. As the discussion below suggests, however, in the context of a civil dispute over an allegedly illegal detention, the instruction is out of place.

jury that she had been illegally detained or arrested, thus minimizing the likelihood that the voluntary consent instruction would have misled the jury.

Second, even if the jury's decision did rest on a finding that Larez had been taken to the station and held in the cell against her will,[3] the voluntary consent instruction would have had an impact on the verdict only if one side had failed completely to adduce any evidence or if the jury had found the evidence equally compelling on both sides. As a practical matter, if the jury determined that a preponderance of the evidence supported either of the parties, the formal placement of the burden would not have had any effect. In this case, the jury was required to choose between two diametrically opposed accounts of what had occurred. Holcomb and Larez disagreed not only over whether Larez had consented to going to the station, but also over whether the officers who first detained Larez had their revolvers drawn, whether Larez was handcuffed, whether Larez was held in a police car pending Holcomb's arrival, whether she spoke freely or remained silent, whether the holding cell door was left open, and so on. Although a jury conceivably could find such conflicting testimony equally plausible, it is highly significant that, in this case, the jury not only found Holcomb liable, but also assessed a punitive award against him. In order to award any punitive damages, the jury had to find that Holcomb had engaged in "extraordinary misconduct." The court's instruction on this point was unambiguous. The jury's implicit finding of extraordinary misconduct provides a strong indication that the jury did not find Holcomb's account persuasive. *See Benigni v. City of Hemet,* 879 F.2d 473, 480 (9th Cir.

1988) (holding that a court's failure to instruct the jury on reasonableness was harmless because the jury's award of punitive damages indicated that the jury found the police officer's conduct unreasonable); *see also Coursen v. A.H. Robins Co.,* 764 F.2d 1329, 1338–39 (9th Cir.1985) (looking to verdicts in related cases in determining that an improper jury instruction on burden of proof was more probably than not harmless).[4]

Accordingly, although an error in a trial court's jury instructions relating to the parties' respective burdens of proof ordinarily would require reversal, we conclude that, on the facts of this case, reversal is not warranted. We emphasize that the jury here found that Holcomb had engaged in extraordinary misconduct, and note that the erroneous instruction was ambiguous and isolated. Viewing the jury charge and record as a whole, we hold that the inclusion of the erroneous instruction was more probably than not harmless.

B. *Jury Instruction Regarding the City's Indemnification of Holcomb for Compensatory Damages*

 Holcomb next challenges the district court's instruction informing the jury that the City would indemnify Holcomb for any compensatory damages awarded to Larez. Holcomb contends that the instruction had no relevance to Larez's damages and was therefore improper. We agree.

 It has long been the rule in our courts that evidence of insurance or other indemnification is not admissible on the issue of damages, and, should any such information reach the ears of the jurors, the court should issue a curative instruction. *See, e.g., Halladay v.*

---

3. The jury could have decided in favor of Larez without ever reaching the consent issue. Although this consideration alone would not be sufficient to render the instruction harmless, we note that the evidence was sufficient to support a verdict for Larez based solely on the events surrounding the initial detention. The jury might have agreed with Larez, for example, that the officers under Holcomb's supervision did not have reasonable suspicion when they first detained her. Similarly, the jury might have believed Larez's claim that she was handcuffed, thus never reaching the question of whether she

subsequently consented to being taken to the station and placed in the cell.

4. Although our decision here turns on the fact that, in order to award punitive damages, the jury had to find that Holcomb had engaged in extraordinary misconduct, it does not turn on the *amount* of the award. Our conclusion here is thus consistent with our conclusion below that the district court erred when it allowed the jury to hear that the City might indemnify Holcomb for punitive damages, potentially inflating the amount of any award.

*Verschoor,* 381 F.2d 100, 112 (8th Cir.1967) ("Unless the fact that the plaintiff is insured or otherwise indemnified is a material issue in the case, or unless the prejudicial effect has been cured by an admonition or instruction to the jury to disregard it, it has been almost universally held that the receipt of such evidence constitutes prejudicial error sufficient to require reversal."). We see no reason to depart from this rule in the context of a § 1983 action.

The district court instructed the jury, over defense counsel's objection, as follows:

> If an employee of a public entity requests the public entity to defend him against any claim arising out of an act made within the scope of his employment, and gives the entity sufficient notice, and reasonably cooperates in good faith in the defense of the claim, *the public entity shall pay any compensatory damages awarded.*

Instruction No. 45 (emphasis added). The district court seems to have had an legitimate motive in informing the jury that the City would indemnify Holcomb. The court reasoned that because jurors were likely to feel sympathy for Holcomb, a public servant, they might decide not to compensate Larez fully so as not to place an undue financial burden on Holcomb. Once the jury was told that the City would pay, the court reasoned, the jury would be more likely to focus exclusively on the extent of the injury suffered by Larez.[5]

Although the district court was right to be concerned that juror sympathies might distract the jury from dispassionate determination of an appropriate damages award, its instruction on indemnification was not a proper response. The district court should have addressed its concern with a firm admonition to the jury. The court, for example, might have emphasized that if the jury determined that Larez's constitutional rights had been violated, the jury should calculate damages based solely on the injuries actually suffered by Larez, without regard for Holcomb's finances or the jury's personal likes and dislikes.

Although there is no way of ensuring that jurors engaged in calculating compensatory damages focus exclusively on the injury suffered by the plaintiff, all efforts of the court should be directed toward removing potentially distracting considerations. Instructions on indemnification only open the door to such distractions. In this case, having been told that Holcomb would not bear the burden of a damages award, the jury might have been tempted, out of sympathy *for Larez,* to inflate the award beyond the amount necessary to compensate her. Moreover, if we allow juries in § 1983 actions to be told that the government will indemnify the defendant, we presumably should also allow the defendant to explain that any award paid by the government will come out of the people's taxes. Instead of focusing the jury's attention on the injury actually suffered by the plaintiff, we would be subjecting the jury to a flurry of largely irrelevant assertions and counter-assertions concerning who may or may not be financially harmed by a particular award.

Although the Ninth Circuit has yet to address this issue in the § 1983 context, we here follow the lead of the Eighth Circuit, the only Circuit to have announced expressly that it would continue to apply the common law indemnification rule in § 1983 damages determinations. *See Green v. Baron,* 879 F.2d 305, 310 (8th Cir.1989) (holding that, in § 1983 action, court should not instruct jury that state will indemnify employee); *Griffin v. Hilke,* 804 F.2d 1052, 1057 (8th Cir.1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3184, 3185, 96 L.Ed.2d 673 (1987) (noting that "[t]he general rule in the state courts and under Fed.R.Civ.P. 61 is that interjection of the fact that the defendant is protected by insurance or other indemnity may be prejudi-

---

**5.** The court provided the following rationale to counsel:

> It's because the jury in these civil rights cases sometimes [is] concerned that the officer might have to pay damages that they award, and if he does, they are concerned that maybe he won't have the ability to do so just because of the salary that they assume that officers make.... [S]o the reason that the instruction is given is because if the jury is worried about who is going to pay, this instruction tells them that the City may pay.

[R.T. VI–74: 7–20].

cial error requiring reversal," and holding that, in § 1983 action, court's failure to provide curative instruction after counsel for plaintiff suggested that city government "owes" for wrongful acts of police officers was reversible error).[6]

Having determined that the district court erred when it instructed the jury that the city would likely pay any compensatory damages award, we must next determine whether the error warrants a new trial on both liability and damages, or on damages alone. There is no evidence, and little suggestion in the arguments of counsel, that the district court's instruction on indemnification might have infected the jury's determination of liability. The evidence in the record, moreover, amply supports the jury's finding that the acts of Holcomb deprived Larez of her Fourth Amendment rights: Larez testified that she was handcuffed, detained in a police car, and then put in a jail cell for over an hour, and Holcomb concedes that he did not have probable cause to make an arrest. Accordingly, we will not upset the jury's determination of liability and will reverse and remand for a new trial on damages alone.

C. *Counsel's Argument Regarding the City's Indemnification of Holcomb for Punitive Damages*

■ Holcomb also challenges a statement made by Larez's counsel during his closing argument that the City of Los Angeles was authorized to indemnify Holcomb for any punitive damages assessed against him.[7] The reasons that lead us to find the compensatory damages indemnification instruction improper apply with equal force in the punitive damages context. We conclude that the district court erred when it allowed the information on potential punitive damages indemnification to come before the jury.

We note at the outset that the statement of Larez's counsel was prompted by the district court's decision to give a jury instruction informing the jurors that the City would indemnify the defendant. Before closing argument, while settling the jury instructions, the court indicated to counsel that it would instruct the jury on the City's indemnification of both compensatory *and* punitive damage awards. Defense counsel objected to both instructions. After closing argument, however, when the court instructed the jury, it only gave the compensatory damages indemnification instruction. For some inexplicable reason, the court overlooked giving the instruction on punitive damages. In the meantime, Larez's counsel already had told the jury in his closing argument that the City was authorized to pay punitive damages assessed against Holcomb. We will review for abuse of discretion the argument of Larez's counsel, encouraged by the court, concerning the City's indemnification of punitive damages. *See United States v. Johnson,* 956 F.2d 197, 199 (9th Cir.1992) (applying abuse

---

6. Holcomb urges us to rely on Rule 411 of the Federal Rules of Evidence. Rule 411, entitled "Liability Insurance," provides that:

 *Evidence* that a person was or was not *insured* against liability is not admissible *upon the issue whether the person acted negligently or otherwise wrongfully.* This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

 Fed.R.Evid. 411 (emphasis added). Although we note that our holding is consistent with Rule 411, we do not rest our decision on the Rule. Rule 411 expressly covers the admissibility of evidence of insurance for purposes of determining liability, but it is unclear whether it reaches jury instructions concerning indemnification by the government. Because we were not briefed on the extent to which Rule 411 has displaced federal common law, we leave for another day a determination of the reach of Rule 411.

7. This statement reflects in substance Cal.Gov't Code § 825(b), which provides that:

 [A] public entity ... is authorized to pay that part of a judgment that is for punitive or exemplary damages if the governing body of that public entity, acting in its sole discretion, finds all of the following:

 (1) The judgment is based on an act or omission of an employee or former employee acting within the course and scope of his or her employment as an employee of the public entity.

 (2) At the time of the act giving rise to the liability, the employee or former employee acted, or failed to act, in good faith, without actual malice and in the apparent best interests of the public entity.

 (3) Payment of the claim or judgment would be in the best interests of the public entity....
 Cal.Gov't Code § 825(b) (Supp.1993).

of discretion standard to jury instructions); *United States v. Diaz*, 961 F.2d 1417, 1418 (9th Cir.1992) (applying abuse of discretion standard to court's control of closing arguments).

The fact that the City is authorized to indemnify officers for punitive damages was no more relevant to the jury's calculation of an appropriate punitive award against Holcomb than the fact that the City pays compensatory damages was relevant to the jury's determination of the actual damages suffered by Larez. The same common law principle and equitable considerations apply. The City was not a party to this suit, and allowing the jury to hear that the City might cover Holcomb for any punitive damages award could only have distracted the jury from its task of arriving at a punitive award appropriate to the wrongdoing of Holcomb.

■ Although it is true that one important function of punitive damage awards in the § 1983 context is to create a strong incentive for police officers and other officials to respect the Constitution and federal laws, the "sting" of any given award should reflect the jury's determination of what level of damages would deter the individual defendant, and others in his or her position, from future violations. *See* Restatement (Second) of Torts § 908(1) (1979) ("Punitive damages are damages ... awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."). The fact that "taxpayers have decided through their representatives that it is to their benefit as taxpayers to help out the officers," *Cornwell v. River-*

*side*, 896 F.2d 398, 400 (9th Cir.1990), is irrelevant to the determination of a suitable award. When a city pays for punitive damages, of course, the deterrent effect of the sanction is diminished considerably, but, from the perspective of the wrongdoer, who pays nothing regardless of the size of the award, this reduction in "sting" occurs no matter what amount the jury assesses. Informing the jury of indemnification thus would provide a windfall to plaintiffs at taxpayers' expense, with little appreciable increase in deterrence. *Cf. Keenan v. Philadelphia*, 983 F.2d 459, 477–484 (3rd Cir.1992) (Higginbotham, J., dissenting) (pointing out tension between deterrent rationale for punitive damages and taxpayer indemnification of punitive awards, and contending that, even where city will ultimately foot the bill, evidence of defendant's *personal* economic worth should be prerequisite to award of punitive damages in § 1983 context).[8]

Accordingly, we remand for a new trial on punitive damages.[9]

### D. *Rule 11 Sanction*

■ Larez challenges the district court's denial of her motion to impose sanctions on defense counsel pursuant to Fed.R.Civ.P. 11. We review a district court's denial of a motion for sanctions under Rule 11 for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990); *Townsend v. Holman*, 929 F.2d 1358, 1365–66 (9th Cir. 1991) (en banc).

Larez filed the motion to impose sanctions in response to the filing of "Defendant's Op-

---

**8.** Holcomb again urges application of Fed. R.Evid. 411 on the indemnification issue. For the reasons articulated in footnote 3 above, we decline to do so. Citing to 42 U.S.C. § 1988, which allows federal courts to turn to state law in § 1983 actions when federal law is "deficient," Holcomb also contends that, because federal statutory law does not expressly address the admissibility of information relating to government indemnification policies, we should fill the gap by applying California state law. Holcomb notes that Cal.Gov't Code § 825(b)(3) directly addresses the punitive damages indemnification question. Section 825(b)(3) provides in relevant part as follows:

The possibility that a public entity may pay that part of a judgment that is for punitive

damages shall not be disclosed in any trial in which it is alleged that a public employee is liable for punitive or exemplary damages, and that disclosure shall be grounds for a mistrial. Cal.Gov't Code § 825(b)(3) (Supp.1993). Although the import of this state rule, like that of Fed.R.Evid. 411, is consistent with our holding, we do not rely on the California rule because we find that well-established federal common law is directly on point.

**9.** In light of our decision to remand for a new trial on punitive damages, we do not reach Holcomb's contention that the punitive damages award was excessive.

position to Plaintiff's Motion for Attorney's Fees and a Multiplier." Larez alleges that the motion contained "serious misrepresentations" without legal or factual basis and was therefore frivolous under Rule 11.

"Rule 11 requires the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Conn v. Borjorquez,* 967 F.2d 1418, 1420 (9th Cir. 1992). A "frivolous" filing is "both baseless and made without reasonable and competent inquiry." *Townsend,* 929 F.2d at 1362. But Rule 11 "must be read in light of concerns that it will ... chill vigorous advocacy." *Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. at 2454. "If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time the position is adopted, then sanctions should not be imposed." *Golden Eagle Dist. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1538 (9th Cir. 1986).

We first consider Larez's challenge to defense counsel's reference to the attorneys' fee award in the related case, *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir.1991). The district court found a degree of overlap in the preparation for the case at hand and the *Larez v. City of Los Angeles* case. Accordingly, defense counsel's reference to the fee award in the other *Larez* case did not warrant imposition of Rule 11 sanctions.

Secondly, Larez challenges as frivolous Holcomb's claim that the documented fee statements submitted by Larez's counsel are unsupported by the evidence and that "no showing is made to support the multiplier application." The district court accepted the documentation provided by Larez's counsel as adequate to substantiate at least a partial award of attorneys' fees. The district court agreed, however, with Holcomb's argument that a multiplier was not appropriate.

Regardless of the relative success of these two claims, however, we cannot say that such claims were so legally and factually untenable as to render the opposition motion frivolous under Rule 11.

Finally, we consider Larez's claim that Holcomb's request for a jury trial on the issue of attorneys' fees was frivolous and unsupported by law. Holcomb requested that the court impanel a jury to make the requisite factual findings for determining an appropriate attorneys' fee award. He cited no controlling authority to support this request.

■■■ This court should not impose Rule 11 sanctions in response to a pleading that makes a "good faith argument for the extension, modification, or reversal of existing law, and that is not interposed for any improper purpose." Fed.R.Civ.P. 11; *see also Operating Eng'rs Pension Trust v. A–C Co.,* 859 F.2d 1336, 1344 (9th Cir.1988). Rather, we must exercise extreme caution in sanctioning attorneys under Rule 11, *particularly* where such sanctions emerge from an attorney's efforts to secure the court's recognition of new rights. *See id.; Townsend,* 929 F.2d at 1363. Hence, we conclude that Holcomb's jury trial request on the issue of attorneys' fees was not frivolous.

We rule that defense counsel filed Holcomb's motion opposing attorneys' fees and a multiplier in good faith and that the motion was objectively reasonable. Accordingly, we affirm the district court's order denying imposition of Rule 11 sanctions.

### E. *Attorneys' Fee Award*

■■■ Because we are remanding for a new trial on damages, and because the "result obtained" at trial is one of the twelve factors that a district court is obliged to consider in determining an appropriate fee award, *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied sub nom Perkins v. Screen Extras Guild, Inc.,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), we vacate the attorneys' fees award and remand for a recalculation of fees following the outcome of the new trial on damages. *See e.g., Farrar v. Hobby,* — U.S. ——, ——, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992) (holding that degree of success obtained is critical factor in determination of appropriate attorneys' fees award in § 1983 action); *Smiddy v. Varney,* 665 F.2d 261, 268 (9th Cir.), *cert. denied,* 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982) (where appeals court reverses and remands for new trial on damages, attorneys' fee

award should be vacated and a new award determined following the new trial).

We expressly do not suggest that a lower total damages award, if one results, necessarily should lead the district court to reduce the attorneys' fees award. Although the "result obtained" is one of the factors that the court should consider in recalculating the award, the district court should again look at all of the relevant considerations. When computing the fees award, the district court should also determine a reasonable award, if appropriate, for fees incurred by Larez in preparing for the new trial.[10]

### F. *Attorneys' Fees on Appeal*

█ Finally, Larez requests attorneys' fees for this appeal. As a party who has succeeded on a substantial issue, she is entitled to attorneys' fees under 42 U.S.C. § 1988. *See, e.g., Larez v. City of Los Angeles*, 946 F.2d 630, 649 (9th Cir.1991). Because she was only partially successful in this appeal, however, Larez should be awarded fees only for the claim she successfully defended on the merits. *See Conner v. Santa Ana*, 897 F.2d 1487, 1494 (9th Cir.), *cert. denied*, 498 U.S. 816, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990). We remand for a calculation of a reasonable fee award for this appeal consistent with the above. This sum should be added to the total award determined by the district court following the new trial on damages.

### III. CONCLUSION

We reject Holcomb's contention that the district court's jury instruction on voluntary consent warrants a new trial. The jury verdict holding Holcomb liable for violating Larez's Fourth Amendment rights stands. Because admission of the information that the City of Los Angeles was authorized to indemnify Holcomb for compensatory and punitive damages was erroneous and may have

prejudiced the jury, however, we reverse and remand for a new trial on damages. We also remand for a recalculation of an appropriate attorneys' fees award following the outcome of the new trial on damages.

### AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

PREGERSON, Circuit Judge, concurring in part and dissenting in part:

I concur in all parts of the majority opinion except the rulings that the district court erred (1) by instructing the jury that the city would indemnify Officer Holcomb for compensatory damages, and (2) by allowing Larez's counsel to tell the jury that the city was authorized to indemnify Officer Holcomb for punitive damages.

### 1. *Jury Instruction Regarding the City's Indemnification for Compensatory Damages*

I disagree with the majority's ruling that the jury instruction that the city would indemnify Officer Holcomb for compensatory damages was irrelevant to Larez's damage claim, and thus, improper. The majority reasons that instructions on indemnification only distract a jury and potentially prejudice a defendant by exposing him to an inflated damage award. For authority, the majority relies on Eighth Circuit cases that exclude indemnification evidence in § 1983 cases based on concerns of undue prejudice. *See Green v. Baron*, 879 F.2d 305, 310 (8th Cir. 1989); *Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3184, 3185, 96 L.Ed.2d 673 (1987). The majority also attributes support for its position on Federal Rules of Evidence ("FRE") 411. I disagree.

The jury instruction in this case[1] does not implicate the prejudice concerns that underlie the exclusion of insurance and indemnification evidence under common law. By in-

---

**10.** Because we are remanding for a recalculation of the attorneys' fees award, we do not reach the merits of the challenges to the fee award put forward by Larez.

**1.** If an employee of a public entity requests the public entity to defend him against any claim

arising out of an act made within the scope of his employment, and gives the entity sufficient notice, and reasonably cooperates in good faith in the defense of the claim, *the public entity shall pay any compensatory damages awarded.*

Instruction No. 45 (emphasis added).

structing the jury that the city, not Holcomb, would pay any compensatory damage award, the district court intended *to prevent* the jury from considering the defendant's ability—or inability—to pay such damages in arriving at a fair award. The district court reasoned as follows:

> It's because the jury in these civil rights cases sometimes [is] concerned that the officer might have to pay damages that they award, and if he does, they are concerned that maybe he won't have the ability to do so just because of the salary that they assume that officers make.... [S]o the reason that the instruction is given is because if the jury is worried about who is going to pay, this instruction tells them that the City may pay.

[R.T. VI–74: 7–20].

The district court sought to ensure that the jury would award damages that fairly compensated Larez.[2] The court's concern was legitimate, because "the ability of a defendant to pay the necessary damages injects into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result [on the plaintiff]." *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir.1977) (citation omitted).

Furthermore, I cannot say that the district court's jury instruction, in response to its legitimate concern, was improper. The court was attempting to ensure that the jury arrive at a fair damage award *without regard to* Holcomb's ability to pay. I submit that there is little danger of award inflation when a jury knows that a public officer is indemnified by the city for a compensatory damage award payable out of the public fisc. Any

danger of award inflation by such an instruction does not, in my opinion, outweigh the danger of allowing a deflated award by omitting the instruction. I would therefore conclude that the court did not abuse its discretion by giving the indemnification instruction.

Nor do the policy concerns underlying the FRE 411 exclusion convince me to conclude otherwise. FRE 411, entitled "Liability Insurance," applies only to evidence concerning "liability insurance." The rule is intended to address *the particular* issues presented when courts admit evidence of the existence of *liability insurance.*

> [T]he chief reason for preventing reception of the evidence [that is excluded by FRE 411] is the supposed inclination of jurors to make the insurance company bear the loss *because it has been paid for taking the risk, it is well able to pay, and will spread the loss among its policy holders.*

Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure § 5362, at 429, n. 17 (1980) (citing Morgan, *Basic Problems of Evidence*, at 212 (1961)). The city's indemnification policy is not a policy of "liability insurance." The City of Los Angeles and other California municipalities are not insurance companies; they have not been paid to assume risks; they are unable to spread such risks among "policy holders." Jurors would be aware of such distinctions and would realize that city funds are derived from taxes. In sum, the *protection to insurance companies* rationale for excluding evidence under FRE 411 does not justify restricting admission of evidence regarding city's obligation to indemnify its officers for compensatory damage awards.[3]

---

2. This attempt is further illustrated by an additional instruction, requested by the defense, that the jury received. This other instruction reads as follows:

> In the event that you determine to award the plaintiff a sum of money, you are instructed that the award is not subject to any deductions for federal or state income taxes.
> Instruction No. 49.

3. I also note that, even if we were to apply FRE 411, the rule would not automatically bar the instruction here at issue. The record reveals that the court's instruction concerning the City's indemnification policy went to the issue of *dam-*

ages. By its terms, however, FRE 411 only prohibits the introduction of evidence of liability insurance *on the issue of whether the defendant acted negligently or otherwise wrongfully.* FRE 411 *does not* prohibit the use of evidence of insurance where it is relevant to the issue of damages or punitive damages. *See* 23 Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure § 5364, at 449, n. 20 (1980) ("[Rule 411's inapplicability to the issue of damages] was also the rule at common law"); *see also Morton v. Zidell Explorations, Inc.*, 695 F.2d 347, 351 (9th Cir.1982) (FRE 411 allows the introduction of evidence of liability coverage if offered for "relevant purposes"), *cert. denied*, 460

I believe the jury is entitled to hear the truth. Courts routinely instruct the jury that the plaintiff, if successful, will not pay any income tax on an award. And, jurors very likely already know that a government employee defendant in a civil rights case personally will not pay any damage award against him or her. I see no legitimate reason why the jury should not hear the *whole* truth. As Mark Twain said, "when in doubt, tell the truth."

### 2. Counsel's Closing Argument Statement Regarding the City's Indemnification for Punitive Damages

I also disagree with the majority's ruling that the district court erred by allowing Larez's counsel during closing argument to tell the jury that the city was authorized to indemnify Officer Holcomb against any punitive damage award. At closing argument, Larez's counsel told the jury that the City of Los Angeles is authorized to indemnify Holcomb for any punitive damages assessed against him. Counsel made this statement after the court had indicated before argument commenced that it would instruct the jury on the City's indemnification of both compensatory *and* punitive damage awards. Even though defense counsel objected to both jury instructions, he failed to object to plaintiff counsel's statement during closing argument. Nor did defense counsel request the court to admonish the jury either to disregard the statement or to consider it only with respect to damages. Defense counsel made no motion for mistrial under California Government Code § 825(b)(3). *See* Op., at 1519, n. 5. After closing argument, when the court instructed the jury, it gave the compensatory damage indemnification instruction but *overlooked* giving the punitive damage indemnification instruction.

The closing argument by Larez's counsel was encouraged by the court's initial decision, that was inexplicably not carried out, to give the punitive damages instruction. "The trial court has *broad discretion* in the control of closing arguments." *People v. Ignacio,*

852 F.2d 459, 462 (9th Cir.1988) (emphasis added). Given the unusual circumstances of this case, I would find no abuse of discretion. *See United States v. Diaz,* 961 F.2d 1417, 1418 (9th Cir.1992) (abuse of discretion standard).

The majority reasons that counsel distracted the jury by informing it that the city is authorized to indemnify the officer against punitive damages, and that such a distraction could provide a windfall to plaintiffs at taxpayers' expense, without appreciably deterring the wrongdoer.

To the contrary, jurors as taxpayers arguably might lower a punitive damage award where they know that the city, not the defendant, will bear the costs. In any event, in California, "taxpayers have decided through their representatives that it is to their benefit as taxpayers to help out the officers." *Cornwell v. Riverside,* 896 F.2d 398, 400 (9th Cir.), *cert. denied,* 497 U.S. 1026, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990). Here again, I believe that jurors are entitled to hear the *whole* truth.

LEAVY, Circuit Judge, concurring in part and dissenting in part:

I concur in most of Judge Nelson's opinion, and specifically agree with her that the district court erred by informing the jury that the city would pay any compensatory and punitive damages that might be awarded. However, I would reverse on both liability and damages.

With respect to the first point, I believe that the instruction given on the issue of the plaintiff's consent to arrest was erroneous for at least two reasons: First, and as already noted by Judge Nelson, it placed the burden of proof on the "government," which was not even a party to this case; and second, it required the defendant to prove that the plaintiff consented to her own arrest.

The defendant denied that there ever was an arrest, contending that the plaintiff had

U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983).

consented to accompany him and to remain in his company. Such consent would have been a defense to the plaintiff's claim. Moreover, a lawful arrest, defined as the "taking [of] a person into custody ... in the manner authorized by law", Cal.Pen.Code § 834 (Deering 1993), is not rendered unlawful merely because the arrestee fails to consent to being taken into custody.[1] To require the defendant to prove that the plaintiff consented to something the defendant said was never done, *viz.,* arresting the plaintiff, strikes me as hopeless confusion.

I also take little comfort in the majority's assurance that the jury made an implicit finding of "extraordinary misconduct" by awarding punitive damages in a trial in which the instructions on compensatory damages and the comments on punitive damages were so flawed as to require reversal. Put another way, in order for the district court to retry the issue of damages on remand it will be necessary for it to go back through all of the evidence heard in the first trial. A retrial on damages alone will not be an economy.

The erroneous instruction on compensatory damages, and the plaintiff's comments on punitive damage indemnification, when combined with the instruction giving the "government" the burden of proving consent to something the defendant contends did not even happen, require reversal and remand for a new trial, because none of those errors were harmless.

---

**1.** *I.e.,* where as here the arrest takes place outside of the arrestee's home. *See People v. Wilkins,* 14 Cal.App.4th 761, 17 Cal.Rptr.2d 743 (1993); *People v. Trudell,* 173 Cal.App.3d 1221, 219 Cal.Rptr. 679 (1985); *People v. Villa,* 125 Cal.App.3d 872, 178 Cal.Rptr. 398 (1981).