OPINION OF THE COURT
FUENTES, Circuit Judge:
Appellee, Raymond T. Pryer, a state prisoner, filed a civil rights action against a number of prison guards claiming that they had assaulted him in two separate incidents. A jury found that some of the guards had acted reasonably but found four others liable and awarded Pryer $1.00 in damages. Thereafter, the District Court, on its own motion, ordered a new trial, limiting its scope solely to the issue *450 of damages. In the retrial, the court prevented the defendants from arguing that some of the guards no longer in the case had caused Pryer’s injuries. In that second trial, the jury awarded Pryer $300,000. The guards appeal the District Court’s rulings pertaining to the second trial.
We will affirm the District Court’s order for a new trial. However, because the issues of liability and damages were so intertwined as to make a fair trial on damages alone impossible, we will reverse and remand for a new trial on all issues.
I.
Pryer brought this action under 42 U.S.C. § 1983 alleging that-he was subjected to excessive use of force on September 15 and 27, 1990, while imprisoned at the State Correctional Institution at Pittsburgh. In his complaint, Pryer named approximately forty defendants, including prison officials, medical personnel, and numerous correctional officers. Pryer sought compensatory and punitive damages for his injuries. The District Court dismissed the claims against the prison officials and the medical personnel, and the case proceeded to trial against nineteen guards: Gary Beck, Fred Bogonovieh, Richard Bedilion, Douglas Cameron, Daniel Primm, Jacob Tokarski, Paul Trunick, Daniel Clarke, Robert Jefferson, Perry Ciesielski, Bernard Jacobs, William Balzer, John Weaver, Daniel Caponi, Richard Sla-vec,[1] David Cook, Gerald Prorock, Doyle Bursey, and Russell Wilson. Pryer appeared pro se in the three-day trial, which concerned both incidents and began February 22,1999.
A.
The relevant facts established at trial are as follows. On September 15, 1990, the day of the first incident, Pryer was in the prison exercise yard when he began arguing and fighting with another inmate. Prison guards broke up the fight and handcuffed Pryer, then transferred him to the Restricted Housing Unit (“RHU”) where he was placed in the custody of Officers Balzer, Caponi, Weaver, Bogono-vieh, and Beck.
According to Pryer, these officers began beating him in the hallway near the RHU while admitting him to the cellblock. Pryer testified that, without provocation and while in handcuffs, these five officers punched him with fists, struck him with nightsticks, kicked him repeatedly while he was lying on the ground, and eventually knocked him unconscious. Further, Pryer testified that, as a result of the incident, he suffered bruises, welts, and abrasions. In contrast, Balzer testified that, when Pryer was brought to the RHU, his handcuffs were removed as a preliminary step to a strip search. According to Balzer, Pryer then began screaming and punched Balzer in the face. Balzer testified that he, Weaver, and Caponi used for ce to subdue Pryer. He said that the officers eventually strip-searched Pryer and placed him in a cell.
The next incident took place on September 27, 1990 as Pryer was being searched before going outside for exercise. While being searched, Pryer complained that Officer Wilson, who was conducting the search, had improperly fondled his buttocks, so he requested that another guard complete the search. That request led to an exchange of words and, according to Pryer, Wilson punched him in the face. Officers Caponi and Bursey then began beating Pryer with their fists and batons, *451 and kicked him to the ground. Bursey called for help, and Officers Slavec, Primm, Prorock, and Trunick arrived in response.
At this point, according to Pryer, while he was on the floor, Slavec ordered his subordinates to stop hitting Pryer, and he handcuffed Pryer’s hands behind his back. Shortly thereafter, all of the officers continued the beating. Pryer was then dragged outside the building, and led to an elevator that would take him to the third floor of the RHU. He claims that Officers Prorock, Bursey, Caponi, and Slavec subjected him to additional beatings inside the elevator and along the walkway on the third floor. He said that, at the entrance to the third floor cells, Officers Cameron, Tokarski, Jefferson, Ciesielski, Jacobs, and Cook met him with a barrage of nightstick blows and that Primm and Trunick also participated.
According to Pryer, Officers Slavec, Bursey, Cook, and other guards then led Pryer into an isolation cell where they continued the beatings. There, Slavec jammed a nightstick into his eye and ordered the others to break his hands and legs. The officers then held Pryer down to the cell floor, and struck his hands and legs with nightsticks. Cook also jumped from a cell bed onto Pryer’s stomach, and Cameron and Jacobs used a stun gun on him.
Pryer introduced medical records to prove his injuries. He testified, without dispute, that two bones on his left hand and three on his right hand were broken; his lower left leg was fractured in two places; he was bleeding from the mouth; he urinated blood; his body was covered with bruises; and he had welts on his face, bumps on his head, a swollen eye, and split lips. Further, Pryer testified that, as a result of the incident, he received stitches to his head and lower left leg and his left leg was put in a cast.
Although not all of the officers testified during the trial, their version of the events differed markedly from Pryer’s testimony. According to the officers, Pryer had initiated the second incident by punching Wilson in the face and Caponi in the head. Wilson testified that he had used his baton on Pryer five to ten times, aiming below Pryer’s left knee. Bursey testified that Pryer struck him as well. According to the officers, Pryer was forcibly resisting a search and had to be subdued, ultimately by the use of mace, then stripped and searched by the guards.
At the close of evidence, the District Court, on its own motion, entered a directed verdict in favor of eleven officers: Beck, Bogonovich, Bedilion, Cameron, Primm, Tokarski, Clarke, Jefferson, Cies-ielski, Jacobs, and Trunick. In so ruling, the court stated that Pryer had “failed even to mention some of [the guards during his testimony], and in other respects his evidence rose no higher than [that the guards] were simply present at the scene but were not identified as having caused him any harm in any way.” Pryer objected to this ruling at trial, but does not raise it here on appeal. The trial judge’s ruling left a total of eight officers for the jury’s consideration.
The judge then instructed the jury on the principles governing Eighth Amendment prison excessive force claims. However, on the issue of damages, the court only informed the jury that Pryer would be entitled to compensation for all injuries that were proximately caused by the officers’ conduct. The court did not instruct the jury as to what kinds of injuries were compensable under § 1983, and did not inform the jury that it could award money damages for intangible harms, such as physical and emotional pain, humiliation, *452 and fear engendered by a beating. Finally, the court informed the jury that it must return an award of damages in the nominal amount of one dollar if Pryer failed to prove by a preponderance of the evidence that he suffered any actual injury or damages. Pryer, who was proceeding pro se, did not object to these instructions.
After deliberating for a little over five and a half hours, the jury found in favor of four guards (Balzer, Caponi, Weaver, and Wilson), but returned a general liability verdict against the other four (Slavec, Cook, Prorock, and Bursey).
The jury awarded $1.00 in nominal damages and no compensatory or punitive damages.
B.
On March 10, 1999, the District Court, on its own motion, vacated the damages award and ordered a new trial against Slavec, Cook, Prorock, and Bursey limited to the issue of damages. In its written decision, the court held that the jury’s verdict on damages was against the weight of the evidence and that a new trial was “necessary to avoid a miscarriage of justice.” Additionally, the court ruled that its instructions to the jury as to both compensatory and nominal damages were, respectively, inadequate and legally erroneous. Specifically, the court recognized that it had erred “by failing to instruct the jury that it could consider plaintiffs pain, suffering, and loss of enjoyment of life in affixing compensatory damages.” The court also held that, given Pryer’s undisputed proof of actual injury, an instruction on nominal damages was inappropriate. Notably, the judge did not state any reasons for limiting the second trial to the issue of damages.
C.
On February 22, 2000, after appointing counsel to represent Pryer, the court commenced the second trial.[2] This trial focused only on the damages caused by the second incident.[3] The court began the trial by reading a stipulation of facts and a summary of the medical records describing Pryer’s injuries. Pryer then testified at length against Slavec, Cook, Prorock, and Bursey, and he provided detailed testimony regarding the nature and extent of his injuries. At several times during the course of the trial, the District Court precluded defense counsel from arguing that Pryer’s injuries were apportionable among the various officers, some of whom were no longer defendants in the action. On March 3, 2000, the court issued a detailed written explanation for this ruling, which relied primarily on the principles of joint and several liability, and indivisible harm, found in the Restatement (Second) of Torts. Following detailed instructions on damages, the jury awarded Pryer $300,000 in compensatory damages against all four officers.
On March 13, 2000, the defendants moved for a new trial on the issue of damages or, in the alter native, to reduce the amount of the verdict on the grounds that the court had erroneously instructed the jury that the four officers were responsible for all injuries sustained in the course of the incident. The motion was denied. The four officers now appeal the District Court’s order of a new trial limited solely to damages and the court’s ruling preclud *453 ing defense counsel from arguing the issue of causation to the jury.
II.
The District Court exercised jurisdiction over this case under 28 U.S.C. §§ 1331 and 1334. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291. We review a district court’s order granting or denying a new trial for abuse of discretion, unless the court’s decision is based upon the application of a legal precept, in which case we exercise plenary review. Failla v. City of Passaic, 146 F.3d 149, 152 (3d Cir.1998).[4]
A.
We first conclude that the District Court did not abuse its discretion in ordering a new trial. A trial court is empowered to order a new trial on its own initiative “for any reason that would justify granting one pn a party’s motion.” Fed. R.Civ.P. 59(d). A new trial may be granted when the verdict is contrary to the great weight of the evidence; that is, “where a miscarriage of justice would result if the verdict were to stand.” Olefins Trading, Inc. v. Han Yang Chem Corp., 9 F.3d 282, 289 (3d Cir.1993) (internal quotations and citations omitted).
Generally, “damages are available under[§ 1983] for actions ‘found ... to have been violative of ... constitutional rights and to have caused compensable injury.’ ” Carey v. Piphus, 435 U.S. 247, 255, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (internal quotations, citations, and emphasis omitted). However, “substantial damages should be awarded only to compensate actual injury.” Id. at 266, 98 S.Ct. 1042. Where a constitutional deprivation has not caused actual injury, an award of nominal damages may be appropriate. See id. But nominal damages may only be awarded in the absence of proof of actual injury. See Memphis Cmty. Sch. Disb. v. Stachura, 477 U.S. 299, 308 n. 11, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (“[N]ominal damages ... are the appropriate means of ‘vindicating’ rights whose deprivation has not caused actual, provable injury.”); Carey, 435 U.S. at 248, 266-67, 98 S.Ct. 1042 (approving recovery of nominal damages without proof of actual injury).
In his written opinion, the District Judge recognized that he had erroneously instructed the jury on nominal damages and failed to inform it of the availability of compensatory damages for pain and suffering. Pryer plainly testified as to both the subjective and physical manifestations of injuries he sustained as a result of the incident on September 27, 1990. Pryer further supported this testimony with objective medical records. The guards, however, neither introduced evidence to dispute that Pryer had, in fact, suffered these injuries, nor challenged their nature, extent, and seriousness. Given this evidence, the District Court did not abuse its discretion in concluding that an award of only *454 $1.00 in nominal damages was against the weight of the evidence and that a new trial was required.
We also agree with the trial judge that his charge did not fairly and adequately instruct the jury as to the applicable law on damages, and thus, did not provide the guidance necessary for a determination of an appropriate award. “The standard of review for the district court’s ruling on points for charge is ... abuse of discretion.” Link v. Mercedes-Benz of N. Am., Inc., 788 F.2d 918, 922 (3d Cir.1986). Where a jury charge is alleged to have stated an incorrect legal standard, “we will review the charge as a whole in the light of the evidence to determine if it fairly and adequately submitted the issues to the jury and we will reverse if the instructions were capable of confusing and thereby misleading the jury.” Griffiths v. CIGNA Corp., 988 F.2d 457, 462 (3d Cir.1993) (citation omitted).
In § 1983 actions, damages for violations of constitutional rights “may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation ..., personal humiliation, and mental anguish and suffering.” Stachura, 477 U.S. at 307, -106 S.Ct. 2537 (internal quotations and citations omitted). The court’s err or in failing to instruct as to the availability of damages for such intangible harms, coupled with its emphasis on nominal damages, rendered the totality of the instructions confusing and misleading. See Connecticut Mut. Life Ins. Co. v. Wyman, 718 F.2d 63, 65 (3d Cir.1983). Moreover, the error was fundamental because the incomplete instructions prevented the jury from considering intangible injuries such as pain and suffering. See Levinson v. Prentice-Hall, Inc., 868 F.2d 558, 564-65 (3d Cir.1989). Under these circumstances, we conclude that the District Court did not abuse its discretion in ordering a new trial.
B.
Notwithstanding this result, the guards claim that, because the issues of liability and damages were so closely interrelated, the new trial should have been extended to all issues. The guards infer from the first verdict that the jury had not completely accepted Pryer’s version of the facts, and thus, they accuse the trial court of substituting its judgment for the jury’s findings by effectively holding the four remaining officers responsible for all injuries.
Pryer, however, contends that the guards were well aware before the commencement of the second trial that testimony would be elicited about the underlying incident. Moreover, he notes that the guards did not make a motion in limine or other objection during the second trial, and in fact fully participated in the development of the trial record, including the drafting of certain stipulated facts and the presentation of conflicting testimony and evidence about the events of September 27, 1990. Thus, according to Pryer, the District Court properly permitted both parties to present evidence concerning liability to the extent that such evidence was relevant to the issue of damages, thereby eliminating any threat of injustice.
District courts are authorized to grant new trials as “to all or any of the parties and on all or part of the issues.” Fed.R.Civ.P. 59(a). In this regard, we are guided by the Supreme Court’s pronouncement in Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931): “Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had *455 without injustice.” Consistent with these principles, a new trial limited solely to damages is improper where “the question of damages ... is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.” Id. That is, “[t]he grant of a partial new trial is appropriate ‘only in those cases where it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other issue.’ ” Elcock v. Kmart Corp., 233 F.3d 734, 758 (3d Cir.2000) (quoting Romer v. Baldwin, 317 F.2d 919, 922-23 (3d Cir.1963) (internal quotations and citation omitted)).
In the seventy years since the Gasoline Products decision, we have steadfastly applied this standard “to prevent limited new trials where a tangled or complex fact situation would make it unfair to one party to determine damages apart from liability, or where ‘there is reason to think that the verdict may represent a compromise among jurors with different views on whether defendant was liable.’ ” Vizzini v. Ford Motor Co., 569 F.2d 754, 760 (3d Cir.1977) (citing 6A Moore’s Federal Practice ¶ 59.06, at 59-89 (1973) and quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2814, at 96 (1973)). See, e.g., Simone v. Golden Nugget Hotel and Casino, 844 F.2d 1031, 1041 (3d Cir.1988) (affirming new trial order on all issues for false imprisonment claim where jury “would first have to find at what points the unlawful detention began and ended,” and it would additionally have to assess defendant’s conduct in determining whether punitive damages were warranted); Spence v. Board of Educ. of the Christina Sch. Disk, 806 F.2d 1198, 1201-02 (3d Cir.1986) (affirming new trial order on all issues where plaintiffs claim for emotional distress damages had to be evaluated in light of all circumstances surrounding alleged misconduct, and because plaintiff sought punitive damages, which required presentation to jury of all facts leading up to alleged adverse employment decision).
By contrast, where the error on appeal requiring a new trial related peculiarly to the damages portion of the trial only, and did not implicate the jury’s liability verdict, we have permitted a new trial limited only to the issue of damages. See, e.g., Wagner v. Reading Co., 428 F.2d 289, 291-93 (3d Cir.1970) (remanding for new trial on damages after holding that exclusion of plaintiffs evidence of wage records, which related only to damages issue, was prejudicial error).
A review of the first trial’s transcript plainly reveals that the incident on September 27 involved a “tangled or complex fact situation.” Both sides vigorously contested liability. Pryer presented, in addition to himself, two other inmates who witnessed portions of the incident, while seven correctional officers testified on behalf of the defense. Pryer also introduced uncontroverted testimonial evidence and objective medical records to substantiate his extensive injuries resulting from the beating. Based upon the evidence adduced at trial, Pryer’s injuries could be attributed to the guards’ reasonable use of force, their excessive use of force, his own actions, or some combination of these several factors. Moreover, while the first jury may have concluded that each of the guards in the present appeal used excessive force against Pryer, it is far from clear that Pryer’s injuries cannot be apportioned based upon the nature and extent of his injuries, who was involved, and where the alleged beatings took place.[5]
*456 In particular, Wilson, who was only involved at the beginning of the September 27 incident, testified that Pryer had initiated the second incident by punching him in the head, to which he responded by striking Pryer five to ten times on the lower left leg with his baton. Caponi, who appears to have been involved for a longer duration than Wilson, also testified that Pryer had punched him in the head. Ca-poni was among those guards who utilized force to subdue Pryer in response to his continued resistance, which ultimately included the use of mace and a compulsory strip search. Pryer confirmed this use of force, testifying that Caponi, among others, had repeatedly beat him with fists, batons, and kicks, eventually dragging him outside before leading him to the isolation cell on the third floor of the RHU. The jury, however, exonerated both Wilson and Caponi by finding that their use of force was reasonable under the circumstances. Thus, it is impossible from the record before us to determine whether the injuries sustained by Pryer resulted from Wilson’s and Caponi’s reasonable use of force, the other guards’ excessive use of force, Pryer’s own conduct, or some combination of these possibilities not otherwise evident from the jury’s general verdict.
In short, the factual backdrop establishing the respective culpabilities of the various guards and Pryer himself is entangled within the assessment of the severity of Pryer’s injuries. At its core, Pryer’s claim is that he was the victim of excessive force at the hands of several officers — and this cast of officers changed from scene to scene in the RHU much like the cast in a multiple-act play. In such a case, a jury assessing damages must know the precise factual context in which Pryer’s injuries arose and who caused those injuries. Thus, this is a classic example of where a new trial on all issues is required under the Gasoline Products standard.
Moreover, the probability that the verdict was tainted by compromise also leads us to favor a new trial on all issues.[6] In *457 this respect, we have held that, “when a jury’s verdict is obviously the result of a compromise on the questions of liability and damages, it is considered unjust to order a new trial on damages only.” Rosa v. City of Chester, 278 F.2d 876, 883 (3d Cir.1960) (citations omitted). In this case, the award of $1.00 is not easy to reconcile with the uncontested evidence of injuries Pryer introduced. Indeed, we believe the verdict most likely represented a compromise among jurors with differing views on whether the correctional officers were liable. Here, we are unable to understand why the first jury returned an award of only $1.00 after finding that four officers had used excessive force while two others had used only reasonable force. In such a case, a new trial should be granted on all issues. See, e.g., Stanton by Brooks v. Astra Pharma. Prods., Inc., 718 F.2d 553, 576-77 (3d Cir.1983) (ordering new trial on all issues where award was fairly small compared to reported verdicts for similar injuries to similarly situated plaintiffs, and far smaller than the evidence might have supported, thus strongly indicating that jury’s verdict represented a compromise); accord Lucas v. American Mfg. Co., 630 F.2d 291, 292-94 (5th Cir.1980) (ordering new trial on all issues where jury’s award of less than half of stipulated out-of-pocket losses was a compromise induced by trial judge’s instruction rushing the jury to r each a verdict); Hatfield v. Seaboard Air Line R.R. Co., 396 F.2d 721, 723-24 (5th Cir.1968) (ordering new trial on all issues where liability was hotly contested, and after lengthy deliberations, the jury’s $1.00 award when plaintiff had uncontested special damages of $2,795.75 and substantial pain and suffering “can be seen only as the result of either a compromise on one of the liability issues or as an attempt to render a verdict for [the defendant] with [the defendant] paying the costs”); National Fire Ins. Co. of Hartford v. Great Lakes Warehouse Corp., 261 F.2d 35, 38 (7th Cir.1958) (ordering new trial on all issues where it would be “absurd to say” jury’s award of only one-half the amount of uncontested damages losses “was anything other than a compromise,” especially when liability was vigorously contested); Schuerholz v. Roach, 58 F.2d 32, 34 (4th Cir.1932) (ordering new trial on all issues where jury’s “grossly unjust and inadequate” award of $625 for plaintiff blinded in one eye “can give rise only to the inference” of a compromise verdict).
On this record, there is no reasonable basis for concluding with assurance that the questions of liability and damages were so separable that the jury’s determination on one issue had no bearing on its determination on the other. Simply put, it is not “clearly apparent that the issue [of damages] is so distinct and separable from the [issue of liability] that a trial of it alone may be had without injustice.” Pryer essentially argues that this error was cured by the parties’ conduct during the second trial. However, this puts the cart before the horse as we must confine our review to the record before the District Court at the time when it made the decision to limit the trial solely to damages. Thus, neither the evidence subsequently introduced at the second trial, nor the higher verdict, are relevant. See, e.g., Stanton, 718 F.2d at 577 n. 43 (“[W]e may not take this second, higher verdict into account in deciding whether the district court abused its discretion in limiting that new trial to damages.”).
Unlike a situation in which a discretionary ruling resulting in prejudice to a party is cured by a cautionary instruction during the trial, the unfairness to the guards oe- *458 curred after the first verdict on the District Court’s own initiative, thereby tainting any subsequent proceedings. Thus, on the record presented, we decline to adopt the practice urged by Pryer and promulgated in other circuits whereby new trials are permitted solely on damages with cautionary instructions to the second jury. See, e.g., Watts v. Laurent, 774 F.2d 168, 181-82 (7th Cir.1985); Wheatley v. Beetar, 637 F.2d 863, 867-68 (2d Cir.1980). A straightforward application of the Gasoline Products standard remains the law in this circuit.
Therefore, we conclude that the District Court erred in limiting the scope of the new trial solely to damages. The proofs Pryer submitted, upon which the finding of liability rests, necessarily form the foundation for the award of damages. There was no conceivable fashion by which a second jury could fairly evaluate the extent of Pryer’s damages without also fully appreciating the manner in which the force, both reasonable and excessive, gave rise to his injuries. Under the Gasoline Products standard, the guards are entitled therefore to a new trial on all issues, including liability, causation, and damages. See, e.g., Atkins v. New York City, 143 F.3d 100, 104 (2d Cir.1998) (ordering new trial on all issues because issue of liability was close and vigorously contested, and verdict on damages was inconsistent with facts adduced at trial).
III.
For the foregoing reasons, we conclude that, while the District Court properly ordered a new trial after the first jury’s nominal damages award, it erred in limiting the scope of the trial solely to damages. Accordingly, we will reverse the District Court’s order granting a new trial and remand the case for further proceedings consistent with this opinion.

. In their briefs, the parties apparently agree that "C.O. 3 Slavic” is Lt. Richard Slavec, and thus, we have adhered to this corrected spelling despite the official caption.

. The Court takes this opportunity once again to express its appreciation to Jere Krakoff, Esq., Cathy Bissoon, Esq., and the law firm of Reed, Smith, Shaw & McClay, LLP for agreeing to represent Pryer in this case.

. All of the officers implicated in the first incident were either dismissed by the court or exonerated by the jury.

. At the outset, we note that the District Court articulated no rationale in summarily ordering that "a new trial will be held in this case on the issue of damages.” Ordinarily, where a trial court fails to explain its grounds for exercising discretion, and its reasons for doing so are not otherwise apparent from the record, we are left without any meaningful manner in which to review that ruling. Becker v. ARCO Chem. Co., 207 F.3d 176, 181 (3d Cir.2000). In those circumstances, we need not defer to the trial court’s ruling and may undertake to examine the record and make our own determination. See, e.g., id. (independently reviewing trial court’s denial of evi-dentiary objection).

. We do not agree with the District Court that Pryer suffered an indivisible injury and that *456 the appellants were jointly and severally liable for the entire injury. On the contrary, for the reasons expressed in the text, we believe that there was a " 'reasonable basis for division according to the contribution of each.’ ” SEC v. Hughes Capital Corp., 124 F.3d 449, 455 (3d Cir.1997) (quoting United. States v. Alcan Aluminum Corp., 964 F.2d 252, 268-69 (3d Cir.1992)); see also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 52, at 345 (5th ed. 1984) ("There will be obvious difficulties of proof as to the apportionment of certain elements of damages, such as physical and mental suffering and medical expenses, but such difficulties are not insuperable, and it is better to attempt some rough division than to hold one defendant for the wound inflicted by the other.”).

. Contrary to the dissent, we read the guards' brief as raising this argument. Most of their brief is devoted to their primary argument • that the District Court should not have ordered a retrial at all. However, in the pages devoted to the fallback argument that any retrial should not have been limited to damages, the brief unquestionably raises the argument that the issues of liability and damages are so "intertwined” in this case that they cannot fairly be tried separately. A compromise verdict is simply one example of a type of case in which these issues are "intertwined”; it is not a separate ground for refusing to order a retrial on damages only. Moreover, the brief (at 22) refers expressly to this type of case. Citing Morrison Knudson Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1255 (10th Cir.1999), the brief states that one of "the two instances in which the Gasoline Products rule warrants full retrials” is "when an insupportable damage award calls into question the original jury's finding on liability.” As Morrison Knudson states on the cited page, "[t]he most common example is a compromise verdict, i.e., an award of suspiciously low damages in a case of closely contested liability.” 175 F.3d at 1255.
In addition, unlike the dissent, we do not believe that the guards’ attorney made any statement at oral argument that may fairly be *457 interpreled to mean that the first verdict did not have the hallmarks of a compromise.