**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KIMBERLY MARROQUIN,

*Plaintiff-Appellee*,

v.

CITY OF LOS ANGELES;
DIMAGGIO RICO, Officer, # 43442,

*Defendants-Appellants*,

and

UNIDENTIFIED LAPD OFFICER;
RICHARD PAUL STABILE, Captain;
MATTHEW CLYMER, Officer, #
35204; ALFRED CORSO, Officer, #
31160; LYMAN, Officer, # 38908;
SANTIAGO, Officer, # 38473;
HERMAN USMA, Officer, # 34439;
WILLIAM THOMAS, Officer, #
41752; MARVIN PEREZ, Officer, #
43105; ANTHONY CARILLO,
Officer, # 43442; DOMINIC
SANTIAGO, Sgt., # 34994,

*Defendants*.

No.    23-55423

D.C. No.
2:21-cv-07607-
RGK-JEM

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted June 3, 2024
Pasadena, California

Filed August 27, 2024

Before:  Milan D. Smith, Jr. and Bridget S. Bade, Circuit
Judges, and Sidney A. Fitzwater,[*] District Judge.

Opinion by Judge Bade

## SUMMARY[**]

### Civil Procedure / Post-Trial Orders

The panel affirmed the district court's post-trial orders
after a jury returned verdicts in favor of Kimberly Marroquin
in her 42 U.S.C. § 1983 action against Los Angeles Police
Officer DiMaggio Rico and the City of Los Angeles alleging
excessive force and negligence.

After the jury returned inconsistent damages awards
against Officer Rico and the City on Marroquin's excessive
force and negligence claims, the district granted a new trial

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for
the Northern District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

limited to damages pursuant to Fed. R. Civ. P. 59(a)(1)(A), to prevent a miscarriage of justice. The district court subsequently denied defendants' motion for relief from judgment under Fed. R. Civ. P. 60(b)(2) based on newly discovered evidence, finding that defendants had failed to show reasonable diligence in discovering the evidence and that even assuming the new evidence would conclusively change the result of the trial, defendants' failure to show reasonable diligence was fatal to their motion.

The panel held that the district court did not abuse its discretion by granting a new trial limited to the issue of damages, and rejected defendants' argument that the liability issues and damages issues were so interwoven that a damages-only trial deprived them of their Seventh Amendment right to a fair trial. The panel agreed with the district court that it was highly likely that the jury's confusion when awarding damages was caused by an improper instruction on the verdict form to apportion damages. Because the liability issues were distinct and separable from the damages issues and defendants had no evidence to support their contention that the jury's confusion extended to liability, the jury's improper award of damages did not taint its findings on liability.

The panel held that the district court did not abuse its discretion by denying the Rule 60(b)(2) motion for relief from judgment because, as defendants conceded, they failed to exercise reasonable diligence in discovering the new evidence. The panel joined the Seventh Circuit in concluding that there is no exception to Rule 60(b)(2)'s requirement of reasonable diligence when the newly discovered post-judgment evidence is "conclusive.

**COUNSEL**

Blithe S. Bock (argued), Burke Williams & Sorensen LLP, Los Angeles, California; Shaun D. Jacobs, Supervising Assistant City Attorney; Scott Marcus, Chief Assistant City Attorney; Denise C. Mills, Chief Deputy City Attorney; Hydee F. Soto, City Attorney; Los Angeles Office of the City Attorney, Los Angeles, California; for Defendants-Appellants.

Steven B. Stevens (argued), Steven B. Stevens A Prof. Corp., Los Angeles, California; Ashley M. Conlogue and Kevin S. Conlogue, Conlogue Law LLP, Beverly Hills, California; for Plaintiff-Appellee.

**OPINION**

BADE, Circuit Judge:

In this appeal, Defendants-Appellants Los Angeles Police Officer DiMaggio Rico and the City of Los Angeles challenge the district court's post-trial orders after a jury returned verdicts in favor of Plaintiff-Appellee Kimberly Marroquin. First, Defendants challenge the district court's order granting a new trial limited to damages under Federal Rule of Civil Procedure 59(a) and, second, they challenge the district court's order denying their motion for relief from judgment under Rule 60(b)(2) based on newly discovered evidence.

After the jury returned inconsistent damages awards against Officer Rico and the City on Marroquin's excessive force and negligence claims, both Marroquin and Defendants filed motions for a new trial limited to damages

under Rule 59(a), arguing that the jury erred by apportioning damages unevenly. The district court concluded that the jury had likely been misled by an incorrect verdict form and ordered a new trial on damages "to prevent a miscarriage of justice."

Defendants then moved for relief from judgment under Rule 60(b)(2) based on newly discovered evidence that they argued would conclusively change the result of the trial. The district court denied the motion, finding that Defendants had failed to show they exercised reasonable diligence in discovering this evidence and concluding that, even assuming the new evidence was conclusive, Defendants' failure to show reasonable diligence was fatal to their motion.

Defendants argue that the district court abused its discretion by: (1) granting a partial new trial under Rule 59(a) when the liability issues and damages issues were so interwoven that a new, damages-only trial deprived them of their Seventh Amendment right to a fair trial; and (2) denying their Rule 60(b)(2) motion based on a lack of due diligence without considering whether there was a "conclusive" evidence exception to Rule 60(b)(2). We hold that the district court did not abuse its discretion either by ordering a new trial limited to damages under Rule 59(a), or by denying the Rule 60(b)(2) motion, and we affirm.

I.

A.

On October 11, 2020, the Los Angeles Lakers beat the Miami Heat in game six of the NBA championship series, becoming the 2019–2020 NBA champions. After the game, a crowd gathered outside the Lakers' arena, the Staples

Center,[1] to celebrate their team's victory.  One of the individuals in the crowd surrounding the Staples Center was Kimberly Marroquin.  Marroquin was a Lakers fan who had watched the game at home.  After the Lakers won, she decided to meet a friend, Brenda Gomez, outside the Staples Center.  When Marroquin and Gomez first arrived, there were not "a lot of people there," but shortly thereafter the "crowd started getting bigger" and "[t]raffic got jammed." Individuals in the crowd began lighting smoke bombs, doing doughnuts with their cars, and throwing rocks and bottles at police officers.

When this chaotic scene began developing in the area around the arena, the Los Angeles Police Department (LAPD) initiated "crowd management" measures, which included declaring unlawful assemblies at several intersections near the Staples Center.  The purpose of declaring an unlawful assembly was to provide time for people to leave the area before deploying crowd control tactics, such as skirmish lines and batons.  At around 8:50 p.m., the LAPD declared an unlawful assembly at the intersection of 12th Street and Figueroa Street.

Officer Rico arrived at the Staples Center around 9:00 p.m. and was positioned on a skirmish line facing southbound on Figueroa Street, along with nine other officers.  At 9:02 p.m., Officer Rico turned on his body camera.  About four minutes after he turned on his camera, Officer Rico discharged a .40-millimeter less-lethal launcher.  No other officer in the skirmish line facing

---

[1] In 2020, the arena was called the Staples Center.  In 2021, it was renamed the "Crypto.com Arena."  We refer to the arena as the Staples Center because this was the arena's name when Marroquin was injured.

southbound on Figueroa Street discharged a .40-millimeter round that night.

Marroquin and Gomez were also located near the intersection of 12th Street and Figueroa Street at 9:00 p.m. When the police presence developed south of Figueroa Street, they decided to leave the area, walking northbound. Other members of the crowd surrounding Marroquin and Gomez were "rushing and running" to leave the area. Marroquin felt something "impact" her head and fell to the ground. She spent a couple of seconds on the ground, dazed from the impact, and saw a blue rubber bullet nearby. After another member of the crowd picked Marroquin up and told her that she "had to keep going," Marroquin told Gomez that she had been shot.

## B.

Marroquin sued several LAPD officers and the City, alleging that, while she was "celebrating the recent Lakers' NBA Finals win," an LAPD officer shot her "in the head with a less lethal rubber projectile round," causing her "substantial physical and emotional injuries." Marroquin brought claims under 42 U.S.C. § 1983 for First Amendment violations, excessive force, state-created danger, *Monell*[2] and supervisory liability, as well as California state law claims for negligence, battery, and a Bane Act violation. Two sets of claims survived summary judgment and proceeded to trial: the state law claims and an excessive force claim under § 1983 against Officer Rico, and the state law claims and a *Monell* claim under § 1983 against the City.

---

[2] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 662–63 (1978) (holding that "local government[s] . . . are 'persons'" for purposes of 42 U.S.C. § 1983).

These claims proceeded to a three-day jury trial. All parties agreed that Marroquin was injured outside the Staples Center on October 11, 2020. But the cause of her injury was disputed.

Officer Rico testified that he fired his .40-millimeter launcher in response to a man "raising a beer bottle to throw at an officer." Officer Rico believed that this man, who was about 90 to 105 feet away, posed a threat of serious bodily injury. He testified that, in response, he shot his 40-millimeter launcher, saw that the round hit the man "in his navel area" and that, after the man was shot, he ran off into the crowd.

Marroquin testified that, while she and Gomez were "walking northbound," she "felt [herself] get shot in the head." She fell to the ground and "saw a blue rubber bullet" nearby. And when she stood up, she told Gomez that she had been shot. Marroquin claimed that, prior to being shot, she did not "see anyone about to throw anything." Gomez also testified that Marroquin "immediately" told her that she had been shot, but admitted that the crowd "trampled" her and Marroquin, and that she discovered Marroquin's head injury "right after" that "stampede."

The body camera footage admitted into evidence did not clearly support either Officer Rico's or Marroquin's account. Officer Rico's bodycam footage shows that an individual threw a glass bottle at the officers immediately prior to the discharge of Officer Rico's weapon. But his bodycam footage does not show the individual that Officer Rico asserted was in the process of throwing a bottle, nor does any other officer's bodycam footage.

Marroquin introduced testimony on the damages resulting from her head injury. Two doctors, Dr. Taylor

Kuhn (a neuropsychologist) and Dr. Marisa Chang (a neurologist) testified that they diagnosed Marroquin with traumatic brain injury. Dr. Chang testified that Marroquin reported symptoms including migraines, confusion, difficulty focusing, and memory issues, and that she treated Marroquin's symptoms by prescribing stimulants to help with her memory and concentration, prescribing medications for headaches, and recommending cognitive therapy. Marroquin's therapist, Dr. Sheila Gross, testified that Marroquin occasionally reported symptoms arising from the head injury. Marroquin also testified that her symptoms impacted her work and caused her to become anti-social.

Defendants moved for judgment as a matter of law under Rule 50(a) at the close of Marroquin's evidence, and the district court granted the motion in part after Defendants presented their evidence. The excessive force claim against Officer Rico, and the negligence and battery claims against Officer Rico and the City, were submitted to the jury.

The jury found in Marroquin's favor on her claims against Officer Rico for excessive force and negligence, and on her negligence claim against the City. But Officer Rico and the City were found not liable for battery. The jury next considered damages. The verdict form asked the jury to assess damages against each defendant. The jury awarded Marroquin $1.00 in damages against Officer Rico, and $1,500,000.00 in damages against the City.

### C.

After the verdict, Defendants renewed their motion for judgment as a matter of law under Rule 50(b). They argued that because the City's liability for negligence was "vicarious and dependent upon that of Rico," the jury could award only "the same damages as those awarded against

Rico." Because the "damages against the City" exceeded those "awarded against Rico," Defendants argued that the district court "should grant the Defendants' motion for judgment as a matter of law," "vacate the award of damages against the City," and enter "the same nominal award the jury found" against Rico. Alternatively, Defendants argued that the court should grant a new trial limited to damages under Rule 59(a).

Marroquin also moved to alter or amend the judgment, citing Rule 59(e). She argued that the jury determined that damages totaled $1,500,001.00, that the damages were "not in dispute," but that the jury erred in apportioning the damages unevenly between Officer Rico and the City. Marroquin requested that the judgment be amended to award "1,500,0001.00 against both" Officer Rico and the City. In the alternative, if the district court determined that "only $1.00 in damages is imposed against Defendant Rico," Marroquin requested that "a new trial be ordered as to damages" pursuant to Rule 59(a) because such an award was not "appropriate to compensate [Marroquin] for [her] loss."

The district court denied Defendants' renewed motion for judgment as a matter of law under Rule 50(b) and Marroquin's motion to alter or amend the judgment under Rule 59(e) because it was "impossible to conclusively determine the jury found either that: (1) Plaintiff did not prove her damages case at all; or (2) that [the jury] found her damaged in the amount of $1,500,001." But the district court agreed with the parties' argument that "the jury's decision to assign a $1 liability to Rico and a $1,500,000 liability to the City is irreconcilable." The court explained that the same continuous course of conduct by Officer Rico led to "a single indivisible injury" and "[i]n indivisible injury cases, damages are not assessed by defendant or by claim but

for an injury." Therefore, the district court denied the parties' requests to adjust the damages, but granted a new trial limited to damages.

## D.

Prior to the second trial, Defendants moved for relief from judgment under Rule 60(b)(2) based on two "previously undiscovered" surveillance tapes from the Staples Center. According to Defendants, the Staples Center videos revealed "that the respective locations of Plaintiff and Defendant Rico were such that Defendant Rico could not possibly have discharged the round that Plaintiff alleges caused her injury." Defendants argued that they exercised reasonable diligence in discovering the footage because Officer Rico "stumbled upon it as a result of a separate and unrelated investigation," and because Defendants "had no reason to believe that such videographic evidence existed." In a declaration in support, Officer Rico stated that, since January 2020, he had worked security for the Staples Center when off-duty. While participating in an investigation in his "off-duty" capacity for Staples Center security in January 2023, he reviewed security camera footage, which led him to inquire about whether there was footage of the October 11, 2020, incident. In March 2023, he was advised that there was footage of the incident.

The district court denied the Rule 60(b)(2) motion, explaining that "Defendants have not come close to showing due diligence" because, even though "it became clear during discovery that causation was likely to be a primary issue," "neither Rico nor his attorneys contacted the Arena prior to trial to inquire about the existence of surveillance footage," which was an "astonishing oversight, given that Rico (by his own admission) had easy access to the footage." *See* Fed. R.

Civ. P. 60(b)(2) (allowing relief from judgment based on newly discovered evidence only when that evidence could not have been previously discovered "with reasonable diligence").   The district court concluded that, even assuming the surveillance footage "would have conclusively changed the outcome at trial," this failure to show due diligence was "fatal."

### E.

The district court then held a two-day trial limited to damages.  Like the first trial, Marroquin testified about her symptoms.  But she did not testify regarding the events leading up to the injury—nor did any other witness.  Dr. Chang, Dr. Kuhn, and Dr. Gross provided testimony that was largely identical to their testimony at the first trial.

Defendants did not present any witnesses.  Unlike the verdict form in the first trial, the verdict form in the second trial did not ask the jury to apportion damages by defendant. Instead, the verdict from asked the jury, "What are Plaintiff Kimberly Marroquin's damages?"   The jury awarded Marroquin a total of $500,000.00 against both Defendants, and the district court entered final judgment.

### II.

We have jurisdiction over a district court's final decisions, including final judgments. 28 U.S.C. § 1291. We review for abuse of discretion the denial of a Rule 59(a) motion for a new trial, *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 728 (9th Cir. 2007), as well as the denial of a Rule 60(b) motion for relief from judgment, *see United States v. Asarco Inc.*, 430 F.3d 972, 978 (9th Cir. 2005).

### III.

We first consider the district court's order granting a new trial limited to damages pursuant to Rule 59(a). The district court granted a new trial limited to damages after concluding that it was necessary "to prevent a miscarriage of justice." We hold that the district court did not abuse its discretion by granting a new trial limited to the issue of damages because Defendants have failed to show that the liability and damages issues were so interwoven that a partial trial deprived them of their Seventh Amendment right to a fair trial.

### A.

After a jury trial, a district court may "grant a new trial on all or some of the issues" based on "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The decision to grant a partial new trial, however, is cabined by the Seventh Amendment, which prohibits ordering a new trial limited to damages when damages issues are "so interwoven with [liability issues] that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty." *United Air Lines, Inc. v. Wiener*, 286 F.2d 302, 305 (9th Cir. 1961); *see also Gasoline Prods. Co. v. Champlin Refin. Co.*, 283 U.S. 494, 500 (1931). Thus, when "a tangled or complex fact situation would make it unfair to one party to determine damages apart from liability," *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 455 (3d Cir. 2001), a district court errs by granting a new trial limited to damages. *United Air Lines*, 286 F.2d at 305.

In addition, when a plaintiff seeks exemplary or punitive damages, we have held that ordering a partial trial limited to damages is impermissible. *See id.* at 306. In such a case,

liability issues are necessarily interwoven with damages issues because the damages "depend upon the degree of culpability of the defendant." *Id.* And defendants, faced with the prospect of exemplary or punitive damages, are entitled to present evidence not only to show they were not negligent, but that, "even if there was negligence[,] there was no willfulness or wantonness or extreme recklessness." *Id.*

We have also suggested, albeit in dicta, that separate trials on liability and damages tend to "create 'confusion and uncertainty'" when liability depends on a certain degree of damages. *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 511 (9th Cir. 1989) (citation omitted) (suggesting that the "district court on remand reconsider its view that" bifurcation was warranted because "the issue of liability [for an intentional infliction of emotional distress claim] is intertwined with the issue of damages since the trier of fact can find liability only if it first finds that the plaintiff suffered severe emotional distress"), *as amended on denial of reh'g and reh'g en banc* (Sept. 19, 1989). And, therefore, defendants faced with such a claim would be entitled to present evidence to show that they did not inflict sufficient damage. *See id.*

While liability and damages issues may be so interwoven that a separate damages trial would result in a denial of a fair trial because of the elements necessary to establish liability or the type of damages sought, a Seventh Amendment violation may also result when a jury's mistake in awarding damages tainted the liability finding. *See Larez v. Holcomb*, 16 F.3d 1513, 1520–21 (9th Cir. 1994); 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2814 (3d ed. June 2024 update). A "general assertion" that a mistaken award of damages tainted a jury's liability finding is insufficient, *Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d

1336, 1347 (9th Cir. 1984); instead, a party must provide evidence that the damages tainted the liability finding. *Larez*, 16 F.3d at 1520.

Regardless of the context, though, the ultimate question when determining whether a separate damages trial violates a party's Seventh Amendment rights remains the same: Are the liability issues "distinct and separable" from the damages issues, so that "trial of [damages] alone may be had without injustice"? *Gasoline Prods.*, 283 U.S. at 500.

## B.

Here, the jury awarded Marroquin $1,500,001.00 in damages, with the City liable for $1,500,000.00 and Officer Rico liable for $1.00. Both parties moved for a new trial limited to damages under Rule 59(a), arguing that the jury erred by apportioning damages unevenly. The district court granted these motions and ordered a new trial limited to damages. Defendants argue that this violated their Seventh Amendment right to a fair trial.[3] They contend that the

---

[3] Marroquin argues that Defendants "waived [this] challenge to the district court's order" granting a partial new trial because they failed to argue that liability issues were interwoven with damage issues in front of the district court and instead "asked for a partial new trial on damages." Defendants may have forfeited the issue by not making a timely assertion of their Seventh Amendment right in the district court, but they did not waive it because Marroquin has not identified portions of the record that "evince [Defendants'] intentional relinquishment of a known right." *Hebrard v. Nofziger*, 90 F.4th 1000, 1006 (9th Cir. 2024); *see Crowley v. EpiCept Corp.*, 883 F.3d 739, 748 (9th Cir. 2018) (per curiam) (explaining that forfeiture is the failure to timely assert a right, whereas waiver is the intentional relinquishment or abandonment of a known right). If Defendants had forfeited the issue, they would be required to demonstrate that the district court committed plain error. *See*

liability issues were not "distinct and separable" from the damages issues because the disputed circumstances leading to Marroquin's injury—which were highly relevant to determining Officer Rico's liability—were also relevant to determining emotional damages.

Although conduct leading to an injury can, depending on the context, be relevant to a claim of emotional damages, Marroquin's theory of emotional damages did not depend on the events leading to her injury.  When a claim seeks damages "for pain and suffering associated with . . . physical injury," damages for emotional pain "are traditionally compensable." *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 148 (2003).  The "most common claims of emotional distress" are associated with damages stemming from "tortious injury, [such] as in an every-day automobile accident, medical malpractice, product injury, or toxic injury." D. Dobbs, *The Law of Torts* § 382 (2d ed. Apr. 2024 Update).  Emotional damages are also recoverable, though, from "the conduct which causes" bodily harm.  Restatement (Second) of Torts § 456 (1965); *see Norfolk*, 538 U.S. at 154, 157–58 (holding that, once defendants are found liable for causing the plaintiffs' asbestosis, the plaintiffs could recover damages related to fear of cancer exposure that resulted from the "conduct which cause[d]" their asbestosis).

Marroquin's theory of emotional damages falls within the category of such damages arising from physical injury. Although Defendants assert that "the damages . . . did not lend themselves to a damages-only trial," multiple witnesses traced Marroquin's emotional damages to the head injury,

---

*Crowley*, 883 F.3d at 748.  Because we conclude Defendants failed to establish that the district court erred under the less-stringent abuse of discretion standard, we need not reach the issue of forfeiture.

not Officer Rico's conduct. Several doctors testified that they diagnosed Marroquin with a traumatic brain injury, and that the injury caused her symptoms, including anxiety. Marroquin also testified that the head injury caused her to become anti-social and irritable, which was consistent with Gomez's testimony that Marroquin appeared to be different after being injured—describing her as "traumatized," "standoffish," and "not the same."

Furthermore, no testimony was introduced that Marroquin feared the impending impact of the bullet—indeed, she claimed that she was *unexpectedly* shot. *Cf.* Restatement (Second) of Torts § 456 cmt. e (1965) ("[O]ne who is struck by a negligently driven automobile and suffers a broken leg may recover not only for his pain, grief, or worry resulting from the broken leg, but also for his fright at seeing the car about to hit him."). And Marroquin has never claimed that, once she found out about Officer Rico's conduct, she feared a future injury. *See Norfolk*, 538 U.S. at 159 (concluding that plaintiff could recover emotional damages for fear of cancer when a "fear of future injury stem[med] from" conduct which caused a current injury).

To support their argument, Defendants cite only *Spence v. Board of Education of the Christina School District*, 806 F.2d 1198 (3d Cir. 1986). But *Spence* is inapposite. While the Third Circuit in *Spence* did state that "emotional distress damages must be evaluated in light of all the circumstances," the court was not considering a claim of emotional damages stemming from a physical injury. *Id.* at 1202. Instead, *Spence* considered a claim under 42 U.S.C. § 1983 alleging retaliation for the exercise of First Amendment rights. *Id.* at 1199–1200. That kind of claim imposed an additional causation requirement to recover emotional damages that was intertwined with liability issues.

*Id.* at 1201 (To recover emotional damages, plaintiff had to "submit sufficient evidence to prove that emotional injuries . . . were caused by defendant's conduct."). But as explained above, in cases involving physical injury, emotional damages resulting from bodily harm are compensable without any additional layer of causation. *Norfolk*, 538 U.S. at 148–49.

In short, Marroquin claimed that her head injury caused her emotional damages, not that Officer Rico's conduct caused her emotional damages. Therefore, the liability issues concerning Rico's conduct causing this injury were "distinct and separable" from the emotional damages issues. *Gasoline Prods.*, 283 U.S. at 500.

Defendants also argue that the liability issues were not "distinct and separable" from the damages issues "because the jury's monetary verdict showed its confusion on liability." They contend that the damages verdict showed confusion on liability because the jury awarded only nominal damages against Rico "but significant damages as against the City."

But Defendants have not identified any evidence showing that the jury's improper apportionment of damages tainted the liability finding. *See Larez*, 16 F.3d at 1520; *McClain v. Owens-Corning Fiberglas Corp.*, 139 F.3d 1124, 1128 (7th Cir. 1998). A district court does not err by ordering a new trial limited to damages merely because a party correctly claims that a jury made a mistake when awarding damages. *See Larez*, 16 F.3d at 1520. More is needed: a party must identify evidence showing that "jury confusion appears likely" both as to liability *and* damages. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 847 (9th Cir. 2014), *as amended* (Aug. 8,

2014); *Larez*, 16 F.3d at 1520.  Thus, a jury's liability determination is "not upset" when there "is no evidence . . . that [an improper instruction on damages] might have infected the jury's determination of liability." *Larez*, 16 F.3d at 1520; *see Experience Hendrix*, 762 F.3d at 847 (holding that the district court did not abuse its discretion in granting a new trial limited to damages when the jury's instructions on damages "likely fostered confusion among jurors").

Defendants argue that the jury reached inconsistent findings on liability which, when coupled with the damages award, "indicates juror confusion" on both liability and damages.  According to Defendants, finding Officer Rico liable for excessive force and negligence was inconsistent with the jury finding him not liable for battery because all three claims require "unreasonable force."

We conclude that the jury's differing liability findings on various claims (i.e., finding Defendants not liable for battery) do not establish that the jury was confused on Defendants' liability for the excessive force and negligence claims.  Under California law, a battery claim requires that a defendant touch a plaintiff "with the intent to harm or offend." *Carlsen v. Koivumaki*, 174 Cal. Rptr. 3d 339, 351 (Ct. App. 2014).  But neither a California negligence claim, nor an excessive force claim, requires the same level of intent. *Nelson v. City of Davis*, 685 F.3d 867, 876 (9th Cir. 2012) ("The intentionality requirement [for a Fourth Amendment excessive force claim] is satisfied when the termination of freedom of movement [occurs] through means intentionally applied." (second alteration in original) (emphasis, internal quotation marks, and citation omitted)); *Thomas v. Stenberg*, 142 Cal. Rptr. 3d 24, 29 (Ct. App. 2012) (negligence claim elements).  As the district court explained

when denying Defendants' Rule 50(b) motion, the jury's liability findings were reconcilable because "all the jury was required to find was that Rico did not intend to harm [Marroquin] directly."

We therefore agree with the district court that it is highly likely that the jury's confusion when awarding damages was caused by the improper instruction on the verdict form to apportion damages. Because Defendants have no evidence "to support [their] contention" that this confusion extended to liability, *Digidyne Corp.*, 734 F.2d at 1347, we conclude the jury's improper award of damages did not taint its findings on liability.[4]

Because the liability issues were distinct and separable from the damages issues, we conclude that the district court did not abuse its discretion in granting a new trial limited to damages.

---

[4] Defendants contend that two cases from this court—*Grimm v. California Spray-Chemical Corp.*, 264 F.2d 145 (9th Cir. 1959), and *d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886 (9th Cir. 1977)—support the conclusion that a partial trial limited to damages "is particularly inappropriate" when "liability is hotly contested." But nothing in these cases suggests that a close question of liability alone makes it an abuse of discretion to grant a separate damages trial. Instead, the court in *d'Hedouville* applied the doctrine that "it is an abuse of discretion to grant [a partial damages-only trial] if the question of liability is close, if the damages awarded are grossly inadequate, and if there are other circumstances that indicate that the verdict was the result of prejudice or an improper compromise," and noted that *Grimm* had previously "cited [this doctrine] with approval." 552 F.2d at 897 (citation omitted). Defendants do not contend that damages are "grossly inadequate," so those cases are inapplicable here. *Id.*

IV.

We next turn to Defendants' argument that the district court abused its discretion by failing to apply a "conclusive" evidence exception to Rule 60(b)(2)'s reasonable diligence requirement. *See Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297 (9th Cir. 2014) ("A legal error is an abuse of discretion."). We hold that the district court did not abuse its discretion because there is no "conclusive evidence" exception to Rule 60(b)(2)'s "reasonable diligence" requirement.

A.

Rule 60(b) enables courts to grant relief from judgment to parties based on certain substantive errors. *Delay v. Gordon*, 475 F.3d 1039, 1044–45 (9th Cir. 2007). Under Rule 60(b)(2), a court may revise a judgment because of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Defendants concede that they did not demonstrate reasonable diligence.

Instead, Defendants argue that the express "reasonable diligence" requirement of Rule 60(b)(2) is excused when the newly discovered post-judgment evidence is "conclusive." To support the argument that the requirement of reasonable diligence does not apply when newly discovered evidence is "conclusive," they assert that Rule 60(b)(2)'s purpose is "do[ing] justice" and "seeing that justice is done." But these repeated appeals invoking the court's duty to administer justice do not allow us to read the phrase "reasonable diligence" out of Rule 60(b)(2).

Our analysis thus begins—and ends—with the plain language of Rule 60(b)(2). *See In re Kirkland*, 75 F.4th

1030, 1042 (9th Cir. 2023). Rule 60(b)(2)'s text establishes that the rule was intended to require reasonable diligence, without exceptions. *See* Fed. R. Civ. P. 60(b)(2). Under Rule 60(b)(2), "the court may relieve a party or its legal representative from a final judgment" for "newly discovered evidence that, *with reasonable diligence*, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2) (emphasis added). "Reasonable diligence" is thus an express requirement to receive relief under Rule 60(b)(2), *see Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 211 (9th Cir. 1987), and the text does not include any exceptions, Fed. R. Civ. P. 60(b)(2).

Defendants' invocation of "justice" cannot overcome this plain language. The Supreme Court chose—after a multi-step drafting process[5]—to prescribe a rule that expressly requires the movant to exercise "reasonable diligence" in the discovery of "newly discovered evidence." Fed. R. Civ. P. 60(b)(2); 28 U.S.C. § 2072(a) ("The Supreme Court shall have the power to prescribe general rules of practice and procedure."). The drafters of any rule must weigh competing values, *see Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (per curiam), and by including the requirement of "reasonable diligence," the drafters of Rule 60(b)(2) chose to prioritize the judicial economy and finality that arises from restricting relief based on newly discovered evidence to situations when a litigant is, in fact, reasonably

---

[5] The drafting process begins with an "initial draft . . . prepared by the Advisory Committee on Civil Rules," which is then "reviewed by the Committee on Rules of Practice and Procedure" and, if approved, "forwarded to the Judicial Conference." 12A Charles Alan Wright et al., *Federal Practice and Procedure*, App. C n.1 (2024 ed.). If approved by the Judicial Conference, it is forwarded "to the Supreme Court." *Id.*

diligent in discovering that evidence, *see* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2851 (3d ed. June 2024 update) (Rule 60 "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done.").

Ignoring the plain language of the text would disregard the drafters' choice and "frustrate[] rather than effectuate[]" their intent. *Rodriguez*, 480 U.S. at 526.  The drafters of the rule could have emphasized seeking justice without limitation and without prioritizing finality.  The rule could have read: "The court may relieve a party or its legal representative from a final judgment based on newly discovered evidence whenever justice so permits."  But this is not the rule.  Instead, Rule 60(b)(2) includes an express limitation: relief may be granted only if there is "newly discovered evidence that, *with reasonable diligence*, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2) (emphasis added).  In doing so, the rule's drafters made the choice to limit relief by imposing the requirement to show reasonable diligence.

Therefore, because Rule 60(b)(2)'s text plainly requires reasonable diligence and nowhere provides for a "conclusive evidence" exception, we hold that such an exception does not exist.  In reaching this holding, we join with the Seventh Circuit in concluding that there is no exception to Rule 60(b)(2)'s "reasonable diligence" requirement for "conclusive" evidence. *See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.*, 69 F.3d 1312, 1314–15 (7th Cir. 1995).  The district court therefore did not abuse its discretion by denying the Rule 60(b)(2) motion because, as Defendants concede, they failed to exercise reasonable diligence in discovering the Staples Center videos.

## B.

Finally, Defendants argue that the district court should have granted them relief from judgment under one of the other subsections in Rule 60(b), such as Rule 60(b)(5) or Rule 60(b)(6). In support, they rely on cases which conclude that post-judgment motions should not be denied for a failure to designate the proper subsection. *See, e.g.*, *Fisher v. Kadant, Inc.*, 589 F.3d 505, 513 (1st Cir. 2009).

We agree that a district court should consider a Rule 60(b) motion under the subsection that most naturally applies to the motion's substance, regardless of the label used. *See McKinney v. Boyle*, 404 F.2d 632, 634 (9th Cir. 1968) (holding that a district court erred by denying a motion labeled as being brought under Rule 60(b)(3), but which, in substance, was "within ground (6)"). We conclude, however, that the substance of Defendants' motion brought it within Rule 60(b)(2).

Defendants' motion first set out the requirements to obtain relief under Rule 60(b)(2), which include the moving party (1) "show[ing] the evidence relied on in fact constitutes newly discovered evidence within the meaning of Rule 60(b); (2) . . . exercise[ing] due diligence to discover this evidence; and (3) [demonstrating that] the newly discovered evidence [is] of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (internal quotation marks and citation omitted). Defendants' argument then mirrored these three requirements, asserting that the Staples Center videos were "newly discovered," that they "exercised due diligence in their attempts to discover" the Staples Center videos, and that the Staples Center videos were "of

such magnitude that production of [them] earlier would have likely changed the disposition of the case." The motion thus raised arguments that, on their face, fell under Rule 60(b)(2).

Because the motion was substantively a Rule 60(b)(2) motion—tracking each of the requirements to warrant relief based on newly discovered evidence—we could end our analysis here. *See McKinney*, 404 F.2d at 634 (explaining that the applicable subsection of Rule 60(b) is determined by the "main charge" of motion). But it is also worth noting why Rule 60(b)(5) and Rule 60(b)(6) are inapplicable.

Rule 60(b)(5) allows a court to relieve a party from a judgment if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Defendants' motion did not substantively fall under this subsection because they did not argue that any judgment had been satisfied, identify any earlier judgment on which the district court relied that had then been reversed, or identify any equitable remedy entered by the district court, such as an injunction, that they were seeking to modify. *See* 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2863 (3d ed. June 2024 update); *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1253 (9th Cir. 1999) (explaining that "Rule 60(b)(5) is routinely used to challenge the continued validity of consent decrees" and "injunction[s]").

Defendants' motion also did not fall under Rule 60(b)(6). Although Rule 60(b)(6) is a "catch-all" provision, it does not apply to situations "covered by any of the other reasons set forth in Rule 60." *Delay*, 475 F.3d at 1044. As previously explained, Defendants' motion, on its face, fell under Rule 60(b)(2). Moreover, relief under Rule 60(b)(6) is reserved

for "extraordinary circumstances," *Martinez v. Shinn*, 33 F.4th 1254, 1262 (9th Cir. 2022) (per curiam), and Defendants never argued that their attempt to introduce newly discovered evidence, without showing reasonable diligence, constituted an extraordinary circumstance not covered by any other provision in Rule 60(b).

We therefore conclude that the district court did not abuse its discretion by applying Rule 60(b)(2). Because Defendants' motion was not only labeled a Rule 60(b)(2) motion, but was also substantively a Rule 60(b)(2) motion, the district court reasonably considered whether that motion met the requirements to receive relief under Rule 60(b)(2).

## V.

For these reasons, we conclude that the district court did not abuse its discretion by ordering a new trial limited to damages under Rule 59(a), or by denying Defendants' Rule 60(b)(2) motion.

**AFFIRMED.**